# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Lindemuth, :
:
                  Petitioner :
:
           v. :    No. 812 C.D. 2015
:
Workers' Compensation Appeal :    Submitted: November 6, 2015
Board (Strishock Coal Co.), :
:
                 Respondent :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE MARY HANNAH LEAVITT, Judge[1]
             HONORABLE ANNE E. COVEY, Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**       **FILED: February 24, 2016**


     Frank Lindemuth[2] (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) Decision denying Claimant's Petitions to Review Medical Treatment, Modify Compensation Benefits, Review Compensation

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] The Petition for Review in this matter spells Claimant's last name as both "Lindemuth" and "Lindenmuth," we will use the name set forth in the caption of the Petition for Review.

Benefits, Review Benefit Offset, and Reinstate Compensation Benefits (together, Petitions). On appeal, Claimant argues that the Board erred by: (1) *sua sponte* applying the doctrine of collateral estoppel against Claimant; (2) not concluding that the doctrines of collateral estoppel or res judicata barred the WCJ from deciding that Claimant did not suffer trigeminal nerve damage; (3) concluding that the WCJ issued a reasoned decision; (4) concluding that the WCJ's finding that Claimant's condition has not worsened is supported by substantial evidence; and (5) affirming the WCJ's decision to not award attorney's fees to Claimant. We affirm.

## I. BACKGROUND

Claimant was injured in the course and scope of his employment with Strishock Coal Company (Employer) on October 10, 2005. (WCJ 2013 Decision, Findings of Fact (FOF) ¶ 1.) Employer accepted an injury in an October 19, 2005 Notice of Compensation Payable described as "right and left eyes, face . . . shrapnel and chemical injuries to eyes and face . . . battery explosion with battery acid and shrapnel striking Claimant in face and eyes" and commenced total disability benefit payments. (FOF ¶ 1.)

Prior to the instant litigation, Claimant filed Claim, Review, and Penalty Petitions on October 2, 2006. (FOF ¶ 2.) Claimant's 2006 Claim Petition "assert[ed] that he had sustained complete loss of sight in the right eye and facial scarring and eighty percent loss of use of the left eye and facial scarring." (WCJ 2009 Decision, Findings of Fact (2009 FOF) ¶ 4, R.R. at 216a.) Employer filed a Review Petition that alleged that Claimant's work injury was limited to the loss of

2

use of his right eye and that Claimant suffered no disability separate from the specific loss of his right eye. (2009 FOF ¶ 16, R.R. at 226a.) The ensuing hearings focused, in large part, on whether Claimant suffered injuries separate and apart from the loss of his right eye. The WCJ found, in relevant part:

> (a) On October 10, 2005, [Claimant] sustained an injury during the course and scope of his employment, which injury has resulted in the permanent loss of use for all practical intents and purposes of his right eye. That work injury has not resulted in any residual injury, or disability or loss of vision to his left eye. **The work injury of October 10, 2005 has additionally resulted in [Claimant]'s development of headaches, causally related to his work injury requiring medical treatment, including pain medication. Such headaches have not resulted in any disability separate and apart from his loss of use of his right eye.** [Claimant]'s work injury of October 10, 2005 has further resulted in his development of post - traumatic stress disorder and an adjustment disorder.
>
> . . . .
>
> (g) In reaching these findings, with respect to [Claimant]'s headaches, the testimony and opinions of Dr. Kratz are found to be credible, probative and persuasive, unequivocal and are accepted. They are undisputed by any medical evidence of record. It is noted, however, that Dr. Kratz did not find any disability separate and apart from the loss of use of [Claimant]'s right eye.

(2009 FOF ¶ 25, R.R. at 244a-46a (emphasis added).) The WCJ concluded that Claimant's injury "resulted in a permanent loss of use for all practical intents and purposes of his right eye," but that Claimant "has failed to sustain his Burden of Proof that the additional descriptions of injury has resulted in additional disability separate and apart from his disability associated with his right eye loss of use." (WCJ 2009 Decision, Conclusions of Law (2009 COL) ¶¶ 2-3, R.R. at 250a.) The WCJ's 2009 Decision was affirmed by the Board and by this Court in Lindenmuth

3

v. Workers' Compensation Appeal Board (Strishock Coal), (Pa. Cmwlth., No. 133 C.D. 2011, filed January 27, 2012).

While the appeal of the 2009 Decision was pending before this Court, Claimant filed the instant Petitions on April 14, 2011. (FOF ¶ 3.) Therein, Claimant alleged that the "frequency, duration, and intensity of head pain caused by the injuries he sustained" has increased and sought reinstatement of total disability benefits. (FOF ¶ 3.)[3] The Petitions were consolidated and assigned to the same WCJ that presided over the previous litigation for hearings and disposition.

## II. PROCEEDINGS BEFORE THE WCJ AND THE BOARD

In support of the Petitions, Claimant and his wife testified in front of the WCJ on August 16, 2011. Claimant also submitted the deposition testimonies of his treating neurologist, Ruediger Kratz, M.D., and his family doctor, Phuong Wirths, M.D. In opposition to the Petitions, Employer submitted the deposition testimony of Richard B. Kasdan, M.D.

---

[3] Claimant also filed a Petition for Review of Utilization Review (UR) Determination on December 28, 2011 challenging an earlier UR determination that certain prescription medications were not found to be reasonable or necessary. (FOF ¶ 4.) Claimant succeeded on this Petition and, therefore, Claimant does not appeal the WCJ's Decision in this regard other than with respect to attorney's fees.

Claimant testified as follows.[4]  Claimant started to get headaches in 2005 when he was released from the hospital after his injury.  The headaches seem to be getting worse and last longer, sometimes up to three days.  His headaches occur about five days per week.  The pain starts behind Claimant's eye and travels to the back of his head.  The pain moves back and forth and, at times, feels like he is suffering from "brain freeze" or an ice cream headache.  Claimant takes medication for the headaches daily which cause drowsiness.  After taking the medication, Claimant usually lies in bed and watches television until he falls asleep.  The headaches render Claimant incapable of completing household duties such as cutting the grass and gardening.  His wife performs all the household cleaning.

Claimant's wife testified to the medications Claimant takes and Claimant's ability to do normal activities.[5]  According to Claimant's wife, Claimant takes hydrocodone, Neurontin, and Baclofen for headaches, Seroquel to help him sleep, and Zoloft for depression.  The medications are prescribed by Dr. Wirths and a pain specialist referred to Claimant by Dr. Kratz.  Claimant's wife testified that Claimant cannot drive and does not have an operator's license.  Claimant's wife also expressed her frustration that Claimant cannot complete tasks due to a headache and the drowsiness caused by his medications.

---

[4] The transcript of Claimant's testimony at the August 16, 2011 hearing is found at R.R. 7a-20a.

[5] The transcript of Claimant's wife's testimony at the August 16, 2011 hearing is found at R.R. 20a-26a.

Dr. Kratz, a board-certified neurologist, testified as follows.[6] Dr. Kratz began treating Claimant in 2006. Since then, Claimant has experienced pain in the right side of his face and head, going back to the occipital area. Claimant reports fluctuating pain to Dr. Kratz, ranging from mild at times to very severe. Claimant told Dr. Kratz that the pain has become more frequent and more severe since 2008. Dr. Kratz's examinations of Claimant revealed that Claimant has consistent sensitivity to palpation over the right temple and occasional sensitivity to the tangential foramen. Further, Claimant has consistent sensitivity of the occipital nerve area. Dr. Kratz opined that Claimant's work injury included an injury to his trigeminal nerve. Dr. Kratz opined that Claimant does not have trigeminal neuralgia; instead, Dr. Kratz diagnosed Claimant with atypical facial pain related to the trigeminal nerve.

Dr. Kratz previously testified in support of Claimant's 2006 Claim Petition on April 4, 2008. Dr. Kratz acknowledged that he opined at the time that he did not put conditions on Claimant's ability to work. However, Dr. Kratz's opinion has changed due to Claimant's complaints of increased pain. He now believes that Claimant's pain, and the required medications to treat the pain, preclude Claimant from engaging in gainful employment. (Kratz's Dep. Ex. 3, R.R. at 129a.) On cross-examination, Dr. Kratz acknowledged that his new findings are based solely upon Claimant's subjective complaints and flinching when certain portions of Claimant's face was touched or palpitated. Dr. Kratz's objective findings have not changed since his previous testimony in 2008.

---

[6] The transcript of Dr. Kratz's April 19, 2012 deposition testimony is found at R.R. 86a-116a.

6

Dr. Wirths testified in support of Claimant's Petitions as follows.[7] Dr. Wirths has treated Claimant as his primary care physician since 2003. Although Claimant was primarily treated by specialists immediately following his work injury, Dr. Wirths did treat Claimant during this period for depression, mood disorders and post-traumatic stress. Dr. Wirths took over care for Claimant's headaches from Dr. Kratz in August of 2011 because it was easier for Claimant to travel to Dr. Wirths' office. Dr. Wirths agrees with Dr. Kratz's opinion that Claimant's headaches are the result of trigeminal nerve damage. Dr. Wirths currently prescribes hydrocodone to treat Claimant's headaches, which was previously prescribed by Dr. Kratz. Dr. Wirths opined that Claimant's eyesight, headaches, and associated medications prevent Claimant from working. According to Dr. Wirths:

> The main reason for [Claimant's inability to work] is because the type of headache that happens is that as soon as he takes a prescription, a narcotic, which [is] his hydrocodone, it pretty much knocking him out [sic] and putting him to sleep, and so would prevent any, what I would describe as reasonable employment, because of the medication that he's required to take.

(Wirths' Dep. at 13, R.R. at 145a.)

On cross-examination, Dr. Wirths testified that his diagnosis is primarily based on what Claimant tells him with regard to the severity and regularity of his headaches. When asked whether Claimant's headaches have increased in severity or frequency, Dr. Wirths answered that Claimant's complaints have been

---

[7] The transcript of Dr. Wirths' May 1, 2012 deposition testimony is found at R.R. 136a-59a.

consistent since 2005 and that he was not aware of an increase in the severity of Claimant's headaches. Dr. Wirths experimented with alternative medications, but Claimant had difficulty tolerating the new medication. Claimant takes about fifty to sixty hydrocodone tablets a month and Dr. Wirths observed no symptoms that Claimant is addicted to hydrocodone. Because Claimant is only taking fifty to sixty tablets a month, Dr. Wirths opined that Claimant would not develop narcotic rebound headaches.

Dr. Kasdan testified in opposition to Claimant's Petitions as follows.[8] Dr. Kasdan is board-certified in neurology and conducted an Independent Medical Evaluation (IME) on Claimant at Employer's request on July 5, 2011. Dr. Kasdan reviewed reports from Claimant's treating physicians and took Claimant's medical history. Claimant told Dr. Kasdan about the circumstances of his work injury and that his pain is located in the region of his right temple and migrates backward into the right side of his scalp. Dr. Kasdan opined that Claimant's complaints were not consistent with trigeminal neuralgia or any other type of trigeminal nerve problem. Claimant tried some medications typically used for neuralgia, but those treatments were unsuccessful. Claimant was then put on pain medications to address his headaches. Claimant told Dr. Kasdan that he took one tablet of hydrocodone[9] five times a day.

---

[8] The transcript of Dr. Kasdan's July 26, 2012 deposition testimony is found at R.R. 168a-94a.

[9] Dr. Kasdan's testimony refers to Claimant taking Vicodin, which, according to Dr. Kratz is a combination of acetaminophen and hydrocodone. (Kratz's Dep. at 14, R.R. at 99a.) For purposes of this opinion, we shall refer to the medication by the name used by Claimant's prescribing doctors, hydrocodone.

Dr. Kasdan reviewed images of Claimant's brain and opined that they did not show any type of structural disease in the brain. Dr. Kasdan conducted a physical exam and similarly observed no structural problems relative to Claimant's brain or any other objective evidence that would support Claimant's complaints of headaches. Dr. Kasdan opined that Claimant's headaches are not related to the October 10, 2005 work injury.

On cross-examination, Dr. Kasdan could not recall whether he palpated Claimant's right temple or occipital area and acknowledged that he did not conduct pinprick testing on Claimant's face because Claimant's burns and eye injuries would not have led to a diagnostically significant result.

Upon review of the testimonies given and reports of Drs. Kratz, Wirths, and Kasdan, the WCJ made the following relevant findings of fact and credibility determinations.

(a) [Claimant]'s work injury of October 10, 2005 is not found to have worsened since the time of the June 24, 2009 Decision and Order, nor to such a degree as to create a disability separate and apart from those addressed in the June 24, 2009 Decision and Order. His work injury and description contained therein, is not further amended to include a trigeminal nerve injury. Furthermore, [Claimant]'s increased subjective reports of the frequency and intensity of his headaches are not found to be causally related to the work injury of October 10, 2005, but rather, appear to have very closely correlated with, or subsequent to, the June 24, 2009 Decision and Order denying a finding of an additional disability separate and apart from his specific loss of use of his right eye, and accompanying affirmation of such finding by the Workers' Compensation Board of Appeals [sic] and Commonwealth Court. Consequently, the appurtenant prescription of narcotic medication to address the asserted increase in headaches, is

9

not found to be ca[u]sually related to the work injury of October 10, 2005.

. . . .

(c) In reaching these findings, the testimony of [Claimant] is found to be credible, solely to the extent of the Utilization Review, and the continued reasonableness and necessity of the prescription of the Seroquel, Zoloft and Cymbalta. However, his testimony as to having a worsening of his headaches from the time of the prior Decision and Order, as well as Dr. Kratz's prior testimony, is not found to be credible and is rejected. In so finding, it is noted that [Claimant]'s own treating family physician, Dr. Wirths, admitted that he was not aware of any worsening of the condition, and that he was under the impression that this was just a continuation of ongoing chronic headaches. As acknowledged by both Dr. Kratz and Dr. Wirths, their opinions are based solely upon [Claimant]'s subjective reports of symptomatology, with both acknowledging that neither can recall actually ever personally observing these increased severe headaches. It is further noted that significant inconsistency exists between Dr. Wirths' understanding as to the amount and frequency of [hydrocodone] which [Claimant] has been ingesting, and that as was reported to Dr. Kasdan by [Claimant]. It is further noted that despite these assertions of increased headaches and worsening of condition, that Dr. Kratz acknowledged that objectively he has noticed no difference upon physical examination of [Claimant] from the time of the prior litigation and his testimony and the present. Furthermore, the undersigned had an opportunity to observe [Claimant] during the course of multiple hearings, both during the present and prior litigation. While certainly [Claimant] presented the appearance of someone in a subdued potentially depressed state of mind, or with some cognitive slowness resulting from narcotic medication, there has been no indication of any significant change, at least visually observable, of severe expression of pain or the like.

(d) In reaching these findings, the testimony and opinions of Dr. Kasdan are found to be credible, unequivocal, probative and persuasive and are accepted. They are found to be more credible, probative and persuasive than the testimony and opinions of Drs. Kratz and Wirths, and are accepted over the same. In so finding, it is noted that Dr. Kasdan's findings and opinions upon examination, other than to the extent of Dr. Kratz's belief of a diagnosis of a trigeminal nerve issue, are otherwise entirely consistent with the findings and opinions of Dr. Kratz at the time of his prior deposition in 2008. At that time, Dr. Kratz did not present any other restrictions,

10

or support [Claimant]'s claim for an injury and disability separate and apart from that associated with his right eye specific loss. It is noted that Dr. Kratz acknowledged during his most recent deposition that his findings upon physical examination remain unchanged from before, with his change of opinion being solely due to [Claimant]'s subjective reports. In reaching these findings, and accepting the testimony and opinions of Dr. Kasdan over those of Dr. Kratz and Dr. Wirth[s], it is noted that there are actually inconsistencies between some of the understandings and opinions of Dr. Kratz and Dr. Wirths. In addition to Dr. Wirth[s] acknowledging that he was not aware of any assertion of [Claimant] having an increase in his headache complaints, Dr. Kratz acknowledges having a question as to the reasonableness and necessity of continued prescription of the [hydrocodone], as prescribed by Dr. Wirths.

(e) In reaching these findings, the testimony of [Claimant's wife] is found to be credible, but not probative or persuasive, as to the ultimate issues in this matter. She displayed an obvious frustration with her husband starting tasks, but then not finishing them, but rather went back in the house and taking a [hydrocodone] and lying down and sleeping or watching television. Her testimony and description of such also, to [s]ome degree, buttresses Dr. Kasdan's understanding, undermining Dr. Wirths' understanding, as to the frequency of [Claimant]'s daily [hydrocodone] use.

(FOF ¶ 11 (a), (c)-(e).) The WCJ concluded that Claimant failed to sustain his burden of establishing a change or worsening of his condition from the time of the June 24, 2009 Decision and to establish that his work injury included "trigeminal nerve neuralgia, or symptoms associated with the same." (WCJ 2013 Decision, Conclusions of Law (COL) ¶ 2.) The WCJ further concluded that because Claimant was successful with respect to his Petition for Review of Utilization Review (UR) Determination, "[Employer] shall be responsible for reimbursement of the Claimant's Costs of Litigation associated with the [UR] Determination" and awarded Claimant $2573.00 to that end. (COL ¶ 4.)

11

Claimant appealed the matter to the Board. Claimant argued to the Board that: (1) the WCJ's conclusion that Claimant did not sustain a trigeminal nerve injury and that he no longer requires treatment for his headaches was barred by the doctrine of collateral estoppel; (2) the WCJ's credibility determinations were insufficient; (3) the WCJ's findings were not supported by substantial evidence; and (4) the WCJ erred by not awarding Claimant attorney's fees. (Claimant's Appeal from the WCJ's 2013 Findings of Fact and Conclusions of Law, C.R. at Item 8.) Upon review, the Board concluded that the WCJ was not, pursuant to the collateral estoppel doctrine, bound by findings in the WCJ's 2009 Decision to find that Claimant sustained a trigeminal nerve injury. (Board Op. at 9.) Conversely, the Board concluded that Claimant was precluded from raising the issue of whether he suffered from a trigeminal nerve injury after this issue was fully litigated in 2009. (Board Op. at 11.) The Board further concluded that the WCJ issued a reasoned decision that the WCJ's findings were supported by substantial competent evidence. (Board Op. at 12-15.) Finally, the Board upheld the WCJ's decision to award litigation costs only with regard to Claimant's Petition to Review UR Determination and to deny all attorney fees because Claimant was not successful on his other Petitions. (Board Op. at 15.) Claimant subsequently filed the instant Petition for Review with this Court.[10]

---

[10] "Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.), 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

## III. CLAIMANT'S APPEAL

This appeal involves the application of, and interplay between, Sections 306(c) and 413(a) of the Workers' Compensation Act.[11]  First, Section 306(c) of the Act authorizes benefits for specific loss injuries.  77 P.S. § 513.  The term specific loss is not used in the Act, but it refers to "'either (1) the loss of a body part by amputation or (2) the permanent loss of use of an injured body part for all practical intents and purposes.'"  <u>Pocono Mountain School District v. Workers' Compensation Appeal Board (Easterling)</u>, 113 A.3d 909, 913 (Pa. Cmwlth. 2015) (emphasis omitted) (quoting <u>Schemmer v. Workers' Compensation Appeal Board (U.S. Steel)</u>, 833 A.2d 276, 279 n.5 (Pa. Cmwlth. 2003)).

A claimant who sustains a specific loss of a body part compensable under Section 306(c) of the Act, "is not entitled to compensation beyond that specified in that section even though he may be totally disabled by the injury."  <u>Sharon Steel Corporation v. Workers' Compensation Appeal Board (Frantz)</u>, 790 A.2d 1084, 1088 (Pa. Cmwlth. 2002).  "[I]t is well settled that specific loss benefits are payable without regard to a claimant's earning capacity."  <u>Faulkner Cadillac v. Workers' Compensation Appeal Board (Tinari)</u>, 831 A.2d 1248, 1253 (Pa. Cmwlth. 2003).  Injuries, including those that result in a loss of earning power, that normally flow from the specific loss injuries are considered compensated under specific loss benefits.  <u>Sharon Steel Corporation</u>, 790 A.2d at 1088.  However, if a claimant suffers an injury that is separate and apart from a specific loss of a body part that results in a loss of earning power, a claimant may receive compensation under Section 306(a) of the Act, 77 P.S. § 511, (related to total disability), or

_____

[11] Act of June 2, 1915, P.L. 736, <u>as amended</u>, 77 P.S. §§ 513, 772.

13

Section 306(b) of the Act, 77 P.S. § 512, (related to partial disability), in addition to benefits for the specific loss of a body part. Faulkner Cadillac, 831 A.2d at 1253. Such is also the case when a claimant suffers a specific loss injury and another disability arising from a single incident. See North Star Transfer Company v. Workmen's Compensation Appeal Board, 404 A.2d 1382, 1383 (Pa. Cmwlth. 1979) (stating: "[s]pecific loss benefits provide for all disability emanating from or connected to the lost member but it must not be understood that compensation will be denied for separate injuries arising as a result of the singular incident.").

A claimant seeking concurrent specific loss and disability benefits bears the burden to prove that he has a disability separate and apart from that which normally follows the specific loss injury. Richardson v. Workers' Compensation Appeal Board (American Surfpak), 703 A.2d 1069, 1071 (Pa. Cmwlth. 1997). If a claimant fails to satisfy this burden, other disability benefits are suspended and disability benefits previously received by a claimant related to the specific loss injury are credited to employer. Id.; see also, Ruth Family Medical Center v. Workers' Compensation Appeal Board (Steinhouse), 718 A.2d 397, 403 (Pa. Cmwlth. 1998) (stating that "[i]t is well-settled that a suspension of [compensation] benefits is the appropriate remedy where a work-related injury exists but does not manifest itself in any disability or loss of earning power.").

Where, as here, a WCJ recognized a work-related injury, but suspends benefits based on a conclusion that such injury does not cause a loss of earning power, the WCJ maintains the authority to reinstate benefits or modify an award upon proof that an injury has worsened and resolved into a disability. Section

14

413(a) of the Act, 77 P.S. § 772. Section 413(a) of the Act provides in relevant part:

> A [WCJ] designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its [WCJ], upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.

77 P.S. § 772. Petitions filed pursuant to Section 413(a) are treated the same "as if such petition were an original claim petition." Section 413(a) of the Act, 77 P.S. § 773. To succeed on a reinstatement petition after disability benefits have been suspended, a claimant "must prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." Bufford v. Workers' Compensation Appeal Board (North American Telecom), 2 A.3d 548, 558 (Pa. 2010).

### A. Collateral Estoppel

On appeal, Claimant first argues that the Board erred by *sua sponte* applying the doctrine of collateral estoppel and concluding that Claimant was barred from arguing that his work injury included trigeminal nerve damage. Claimant also contends that the Board erred by not concluding that the WCJ was barred by collateral estoppel from finding that Claimant's headaches were not causally related to his work injury as the WCJ made a contrary finding in the 2009 Decision. Claimant argues that the WCJ found in 2009 that Claimant suffered

15

from a trigeminal nerve injury with resultant headaches that were causally related to his October 10, 2005 work injury. According to Claimant, the WCJ accepted Dr. Kratz's 2009 testimony wherein he opined that Claimant suffers from trigeminal nerve pain as credible, persuasive, and unequivocal, and the WCJ cannot make a contrary finding here. We shall address these related arguments together.

> The doctrine of collateral estoppel forecloses re-litigation of an issue of law or fact that has been finally decided when the following factors are demonstrated: (1) the legal or factual issues are identical; (2) they were actually litigated; (3) they were essential to the judgment; and (4) they were material to the adjudication. The party against whom the plea is asserted must have been a party, or in privity to a party, in the prior action and must have had a full and fair opportunity to litigate the issue in question.

Stiles v. Workers' Compensation Appeal Board (Department of Public Welfare), 853 A.2d 1119, 1124 (Pa. Cmwlth. 2004) (internal citations omitted).

In the earlier litigation, Claimant argued that he suffered from a trigeminal nerve injury and that such "constituted a disabling condition separate and apart from the right eye specific loss." Lindenmuth, slip op. at 13. The WCJ accepted Dr. Kratz's diagnosis that Claimant suffered a trigeminal nerve *injury* as a result of the October 10, 2005 incident as fact and concluded that Claimant "sustained his Burden of Proof that his work injury of October 10, 2005 resulted in his development of headaches, with associated medical treatment." (2009 FOF ¶ 25(g), R.R. at 246a; 2009 COL ¶ 2, R.R. at 250a.) Notwithstanding this finding, the WCJ also concluded that Claimant "failed to sustain his Burden of Proof that the additional descriptions of injury has resulted in additional *disability* separate

16

and apart from" the specific loss of his right eye. (2009 COL ¶ 3, R.R. at 250a (emphasis added).)

We agree with Claimant that the WCJ's 2013 conclusion that Claimant "failed to establish that his work injury of October 10, 2005 has resulted in a diagnosis of trigeminal nerve neuralgia, or symptoms associated with the same" is in conflict with the WCJ's 2009 Decision, where Dr. Kratz's April 4, 2008 testimony that Claimant suffered from a trigeminal nerve injury was accepted as fact. (2009 FOF ¶¶ 2, 25(g), R.R. at 213a, 246a.) Although Dr. Kratz opined on April 19, 2012 that Claimant suffers from atypical trigeminal nerve pain, not neuralgia, the fact that Claimant's headaches are caused by an injury to Claimant's trigeminal nerve was conclusively established in 2009 and the collateral estoppel criteria is satisfied. Both litigations involved the extent of Claimant's head injuries, there was a final judgment on the matter in 2009, the parties fully litigated the issue, and the determination was central to the WCJ's determination that Claimant's work injury included headaches and associated treatments. As such, the WCJ was bound by the doctrine of collateral estoppel to conclude that Claimant suffered a trigeminal nerve injury that caused headaches as a result of the October 10, 2005 incident. The WCJ erred by making a contrary finding.

Notwithstanding this error, the establishment of this fact does not appear relevant to the instant matter. We first note that the terms "injury" and "disability" are not synonymous in workers' compensation law. The term "injury" relates to a physical impairment. See Workmen's Compensation Appeal Board v. Bernard S. Pincus Company, 388 A.2d 659, 664 (Pa. 1978) (adopting the Webster's

17

International Dictionary definition of the term "injury," which provides: "Damage or hurt done to or suffered by a person or thing, detriment to, or violation of, person, character, feelings, rights, property, or interests, or the value of a thing"); Creighan v. Firemen's Relief and Pension Fund Board of City of Pittsburgh, 155 A.2d 844, 846 (Pa. 1959) (using the same definition). Conversely, "[f]or purposes of receiving workers' compensation, 'disability' is a term synonymous with loss of earning power; it does not refer to physical impairment." Kmart v. Workers' Compensation Appeal Board (Williams), 771 A.2d 82, 85 (Pa. Cmwlth. 2001). However, we have also said:

> While ordinarily the term "disability" in compensation law means loss of earning power, for compensation for the specific losses enumerated under Section 306(c), the term, "disability," cannot be judged by the same standard. The term "disability" under Section 306(c) means, quite simply, the specific loss of the member, or eyesight, or hearing, or . . . a permanent disfiguring scar.

Guthrie v. Workers' Compensation Appeal Board (Keystone Coal Company), 767 A.2d 634, 638 (Pa. Cmwlth. 2001).

The WCJ concluded in 2009 that Claimant's headaches, regardless of the cause, did not constitute a *disability* separate and apart from the specific loss of Claimant's right eye. (2009 COL ¶ 3, R.R. at 250a.) Here, the WCJ was called upon to address whether Claimant suffered from worsening headaches and that such headaches constitute a disability separate and apart from his specific loss of Claimant's right eye. The WCJ's conclusion that Claimant did not establish "a change or worsening of his condition from the time of the June 24, 2009 Decision" is not impacted by whether Claimant's headaches are caused by an injury to

18

Claimant's trigeminal nerve or not. (COL ¶ 2, R.R. at 213a.) Although the fact that Claimant's work injury includes headaches, and that such was caused by an injury to Claimant's trigeminal nerve, was litigated and conclusively decided in 2009, the WCJ was not bound by such facts to conclude here that Claimant's headaches have worsened since the prior decision and that his headaches now represent a separate and distinct disability.

Claimant also argues that it was incorrect for the WCJ to find Dr. Kratz's April 4, 2008 deposition testimony credible in 2009, and to reject the same testimony in 2013 as incredible. We disagree with Claimant's understanding of the WCJ's finding. The credibility determination at issue is as follows:

> [Claimant's] testimony as to having a worsening of his headaches from the time of the prior Decision and Order, as well as Dr. Kratz's prior testimony, is not found to be credible and is rejected. In so finding, it is noted that [Claimant]'s own treating family physician, Dr. Wirths, admitted that he was not aware of any worsening of the condition, and that he was under the impression that this was just a continuation of ongoing chronic headaches. As acknowledged by both Dr. Kratz and Dr. Wirths, their opinions are based solely upon [Claimant]'s subjective reports of symptomatology, with both acknowledging that neither can recall actually ever personally observing these increased severe headaches.

(FOF ¶ 11(c).) Although Claimant understands this credibility determination as rejecting Dr. Kratz's 2009 opinion that Claimant's work injury includes headaches, the question at issue in the above credibility determination is whether the testimonies support Claimant's contention that his headaches have worsened since the WCJ's 2009 Decision. Dr. Kratz did not, and could not, opine at his April 4, 2008 deposition that Claimant's headaches have worsened since the WCJ's 2009

Decision. Thus, we understand this credibility determination as rejecting Dr. Kratz's April 19, 2012 testimony where he expressed his opinion that Claimant's headaches have worsened and that Claimant is incapable of gainful employment.

Next, contrary to Claimant's contention, the application of the doctrine of collateral estoppel was not raised by the Board *sua sponte*. Claimant raised the collateral estoppel doctrine with regard to the WCJ's 2009 findings on Claimant's headaches and the Board simply conducted a full analysis of the issue.

However, we conclude that the Board's collateral estoppel conclusion is faulty as its analysis rests on a misunderstanding of the WCJ's 2009 factual findings. The Board's opinion states:

> [W]e conclude that Claimant was barred in this matter from raising the issue of whether he sustained a trigeminal nerve injury, following the WCJ's consideration of Claimant's evidence concerning that issue in the 2009 litigation. Examining the instant Decision and the 2009 decision, with respect to the elements of collateral estoppel, we conclude that: the factual issues are identical as they relate to the description of Claimant's work injury; the issue of Claimant's injury description, and the specific issue concerning whether Claimant sustained a trigeminal nerve injury, was actually litigated in 2009 based on the presentation of the testimony of Dr. Kratz, despite the fact that his testimony in 2009 was undisputed; and, the nature of Claimant's injury description was essential to the 2009 judgment as well as material to the adjudication, and therefore, collateral estoppel barred further litigation of that issue herein.

(Board Op. at 11.) Contrary to the Board's understanding of the WCJ's 2009 Decision, the WCJ concluded in 2009 that Claimant did, in fact, sustain a trigeminal nerve *injury* resulting in headaches. However, the WCJ also concluded

20

that this injury was not a separate and distinct *disability* from Claimant's specific loss of his right eye. Here, Claimant does not seek to establish that he suffers from a trigeminal nerve injury; that fact was already established in 2009. Instead, Claimant seeks reinstatement of disability benefits based on a theory that his headaches have worsened to a point where his injury, the headaches, are now disabling. Because this is a different issue than what was decided in 2009, Claimant is not barred by collateral estoppel from raising his argument here. See Taylor v. Workers' Compensation Appeal Board (Servistar Corporation), 883 A.2d 710, 714 (Pa. Cmwlth. 2005) (holding that collateral estoppel did not apply in that case because the question of whether a claimant recovered from an injury in 2000 and whether the injury has recurred involve different questions relating to the status of a disability during two unrelated time periods).

## B. Substantial Evidence

Claimant next contends that the WCJ erred by concluding that Claimant's condition has not worsened and that his headaches are not disabling. It is well settled that in workers' compensation cases, "[t]he WCJ is the ultimate finder of fact, and the exclusive arbiter of credibility and evidentiary weight." LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena), 754 A.2d 666, 676 (Pa. 2000). In executing its fact finding role, "the WCJ is free to accept or reject, in whole or in part, the testimony of any witness." Id. The WCJ's evidentiary findings are not, however, immune from review. "The WCJ must base its decision on substantial evidence."[12] Id.

---

[12] Substantial evidence is

*(Continued…)*

The WCJ's finding that Claimant's headaches have not worsened is supported by the opinion of Dr. Kasdan. When asked if he observed any evidence in the record or on his examination that substantiates Claimant's reports of worsening headaches, Dr. Kasdan responded "No, I did not." (Kasdan's Dep. at 15, R.R. at 179a.) Further, the WCJ's finding that Claimant's headaches are not disabling is similarly supported by the opinion of Dr. Kasdan. Dr. Kasdan testified as follows.

> Q. Doctor, did you find any objective evidence of any structural problem relative to his brain?
>
> [Dr. Kasdan]. No.
>
> Q. Did you find any objective evidence that would support his subjective history of disabling headaches?
>
> [Dr. Kasdan]. No.
>
> Q. Doctor, from the standpoint of the headaches, did you feel that he was capable of working?
>
> [Dr. Kasdan]. Yes.

(Kasdan's Dep. at 15, R.R. at 179a.) While the testimonies of Claimant, his wife, Dr. Kratz, and Dr. Wirths support a conclusion that Claimant's headaches were

---

relevant evidence that a reasonable person might accept as adequate to support a conclusion. In reviewing a decision for substantial evidence, the court must view the evidence in the light most favorable to the party who prevailed before the WCJ and draw all reasonable inferences from the evidence in favor of the prevailing party. . . . [I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.

Pocono Mountain School District, 113 A.3d at 918 (internal citations and quotation marks omitted).

disabling, the WCJ found Dr. Kasdan's testimony more credible and the fact that "the record contains evidence to support findings other than those by the WCJ" is of no moment when conducting a substantial evidence review. Pocono Mountain School District, 113 A.3d at 918.

## C. Reasoned Decision

Claimant next argues that the WCJ did not issue a reasoned Decision within the meaning of Section 422(a) of the Act[13] because the WCJ failed to adequately explain the reasons for his credibility determinations. A WCJ's decision is reasoned when it "allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." Daniels v. Workers' Compensation Appeal Board (Tristate Transport), 828 A.2d 1043, 1052 (Pa. 2003). "[I]n rendering a reasoned

---

[13] 77 P.S. § 834. Section 422(a) provides:

Neither the board nor any of its members nor any [WCJ] shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

Id.

23

decision in a case with conflicting evidence, the WCJ 'must adequately explain the reasons for rejecting or discrediting competent evidence.'" Id. (quoting Section 422(a) of the Act).

Claimant contends that the WCJ offered no explanation for crediting Dr. Kasdan's opinions over the contrary opinions of Dr. Kratz. We disagree. The WCJ justified his credibility determination by first noting that "Dr. Kasdan's findings and opinions upon examination, other than to the extent of Dr. Kratz's belief of a diagnosis of a trigeminal nerve issue, are otherwise entirely consistent with the findings and opinions of Dr. Kratz at the time of his prior deposition in 2008" and that "Dr. Kratz acknowledged during his most recent deposition that his findings upon physical examination remain unchanged from before, with his change of opinion being solely due to [Claimant]'s subjective reports." (FOF ¶ 11(d).) Furthermore, the WCJ explained that

> there are actually inconsistencies between some of the understandings and opinions of Dr. Kratz and Dr. Wirths. In addition to Dr. Wirth[s] acknowledging that he was not aware of any assertion of [Claimant] having an increase in his headache complaints, Dr. Kratz acknowledges having a question as to the reasonableness and necessity of continued prescription of the [hydrocodone], as prescribed by Dr. Wirths.

(FOF ¶ 11(d).) These two justifications, though not exhaustive, are sufficient to provide for adequate appellate review. We conclude that, because the WCJ provided the above objective reasons for rejecting the portions of Dr. Kratz's opinions that conflicted with the opinions of Dr. Kasdan, the reasoned decision requirement of Section 422(a) of the Act is satisfied.

24

Claimant next argues that the basis for the WCJ's credibility determinations is faulty because unlike Dr. Kratz, Dr. Kasdan did not perform a complete physical examination of Claimant's face. Assessing the credibility of a medical expert that did not conduct a physical examination is within the exclusive providence of the WCJ. Tatano v. Workers' Compensation Appeal Board (Copyworld of Pittsburgh), 698 A.2d 123, 128 (Pa. Cmwlth. 1997). Accordingly, we will not disturb the WCJ's credibility determination.

### D. Attorney's Fees

As a final matter, Claimant contends that the WCJ erred by not awarding him attorney's fees. While the WCJ awarded Claimant $2573.00 to reimburse the cost of litigation related to his successful efforts on his Petition for Review of UR Determination, the WCJ did not award attorney's fees based on a conclusion that Employer presented reasonable contests to all claims. Claimant contends that, at the very least, attorney fees related to the Petition for Review of UR Determination should be provided. Claimant further contends that he is entitled to attorney fees related to the WCJ reevaluating the conclusive 2009 determination that Claimant suffered a trigeminal nerve injury and resulting headaches.

Under Section 440(a) of the Act,[14] claimants who successfully litigate a contested case are entitled to an award of reasonable attorney's fees unless an

_____

[14] Added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 996(a). Section 440(a) provides:

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment

*(Continued…)*

employer presents a "reasonable basis for the contest." 77 P.S. § 996(a).[15] "The award of attorney fees is the rule in work[ers'] compensation cases and their exclusion is the exception to be applied in cases where the record establishes that an employer's contest is reasonably based." Strattan Homes, Inc. v. Workmen's Compensation Appeal Board (Hollis), 633 A.2d 1250, 1256 (Pa. Cmwlth. 1993). We have described the purpose of Section 440(a) of the Act as "to deter unreasonable contests by employers and to insure that a successful claimant receives compensation undiminished by necessary costs of litigation." Papernik v. Workmen's Compensation Appeal Board, 399 A.2d 1205, 1207 (Pa. Cmwlth. 1979).

The burden of establishing a reasonable contest is on the employer. United States Steel Corporation v. Workers' Compensation Appeal Board (Luczki), 887 A.2d 817, 821 (Pa. Cmwlth. 2005). Whether an employer's contest is reasonable is a question of law subject to our de novo review. Id. "A reasonable contest is

---

arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

Id.

[15] While the statute does not explicitly mention challenges to UR Determinations, this Court has held that Section 440(a) of the Act applies to "*any* contested case" and has held that "Section 440(a) does apply to UR Determination Review proceedings. . . ." United States Steel Corporation v. Workers' Compensation Appeal Board (Luczki), 887 A.2d 817, 821-22 (Pa. Cmwlth. 2005) (emphasis in original).

26

established when medical evidence is conflicting or susceptible to contrary inferences, and there is an absence of evidence that an employer's contest is frivolous or filed to harass a claimant." Id.

With regard to Claimant's Petition to Review UR Determination, a November 23, 2011 utilization review determined that Claimant's prescription of Zoloft, Seroquel, and Cymbalta for the period of August 17, 2011 forward, was not reasonable or necessary. (FOF ¶ 4.) The basis of this determination was that Dr. Wirths' records on Claimant's treatment lacked adequate documentation addressing the specific reasons for and efficacy of the prescriptions. (FOF ¶ 4.) Upon review of Claimant's Petition to Review UR Determination, the WCJ concluded that Claimant sustained his burden that his prescriptions for said medications were medically reasonable and necessary. (FOF ¶ 11(b).) Our review of the record reveals that Employer initiated the UR process. Employer has a right to initiate a UR under the Act. Luczki, 887 A.2d at 823. Although initiating a UR process is a contest, because Employer did not file an answer to Claimant's Petition or present any evidence challenging Claimant's UR Petition, Employer did not continue the contest and is not liable for attorney's fees. Cf., id. at 826 (imposing attorney's fees against an employer and stating "[w]hile it was Employer's right under the Act to invoke the initial UR process without any medical evidence, . . . Employer's decision to *continue* the contest in the absence of any medical evidence was unreasonable." (emphasis in original)).

All other contested issues in this case were resolved in Employer's favor. While we agree with Claimant that the WCJ should not have reassessed whether

27

Claimant's injury included headaches caused by a trigeminal nerve injury, Employer did not raise this issue and fees are not awarded under the Act to compensate an attorney for disputing a WCJ's reasoning. Accordingly, Claimant is not entitled to attorney's fees.

## IV.   CONCLUSION

For the foregoing reasons, the Order of the Board is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Lindemuth,                     :
                                       :
                 Petitioner     :
                                       :
                 v.              :   No. 812 C.D. 2015
                                       :
Workers' Compensation Appeal   :
Board (Strishock Coal Co.),       :
                                       :
               Respondent   :

## O R D E R

**NOW**, February 24, 2016, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
             **RENÉE COHN JUBELIRER, Judge**