# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jack Barnhart, : 
                Petitioner : 
                     : 
            v. : No. 66 C.D. 2017
                     : Submitted: July 7, 2017
Workers' Compensation Appeal : 
Board (Tremont Borough), : 
                Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: August 16, 2017**

Jack Barnhart (Claimant) petitions for review of a December 20, 2016 Order of the Workers' Compensation Appeal Board (Board) affirming a February 17, 2016 Decision and Order of the Workers' Compensation Judge (WCJ) denying, in part, Claimant's Petition for Review of Utilization Review (UR) Determination. The WCJ determined that Claimant's use of Provigil to counteract the somnolent effects of the opioid medications he takes was not reasonable and necessary. On appeal, Claimant contends that substantial evidence does not support the WCJ's determination and that the WCJ capriciously disregarded his evidence. Because the WCJ credited the testimony of the UR reviewer over that of Claimant's treating

physician, which constitutes substantial evidence to support the WCJ's finding, and the WCJ did not capriciously disregard Claimant's evidence, we affirm.

In October 1996, Claimant suffered a work-related injury to his back while employed by Tremont Borough (Employer). In 1999, following several operations, Claimant began seeing John B. Chawluk, M.D., a neurologist, for failed back syndrome and radicular back pain associated with his work injury. (R.R. at 7a, 56a.) In order to relieve Claimant's back pain, Dr. Chawluk initially prescribed OxyContin and Lidoderm. (*Id.* at 57a.) In addition, in order "to counteract [the] sedative effects" of Claimant's narcotic medications, Dr. Chawluk prescribed him Provigil. (*Id.* at 7a, 57a.) As of September 2014, Claimant was taking 20 milligrams of OxyContin every 12 hours, 10 milligrams of oxycodone at night, five percent Lidoderm patches applied daily for twelve hours, and 600 milligrams of Provigil a day (400 milligrams in the morning and 200 milligrams in the afternoon).[1] (*Id.* at 7a-8a, 57a.)

In December 2014, Employer filed a UR request questioning whether the prescriptions of oxycodone, Lidoderm, and Provigil were reasonable and necessary for Claimant. (*Id.* at 1a, 6a.)

As relevant to this appeal, Jon Glass, M.D., a neurologist and the reviewer of the UR, concluded that Provigil is not reasonable and necessary for Claimant because it is being used to counteract the sedative effects of his narcotic medications but "[t]here is no evidence [in] the medical literature that Provigil is effective for this indication." (*Id.* at 8a.) Rather, Provigil is used to treat obstructive sleep apnea hypopnea syndrome, narcolepsy, or shift work sleep

---

[1] OxyContin is an extended-release form of oxycodone. (R.R. at 60a.) Oxycodone, in contrast, is released immediately into the bloodstream. (*Id.* at 68a.)

2

disorder. (*Id.*) For support that Provigil is used only to treat these conditions, Dr. Glass cited to the website for Prescribers' Digital Reference. (*Id.* at 9a.)

Claimant petitioned for review of the UR determination. A hearing ensued before a WCJ on August 20, 2015, during which Claimant testified regarding the dose of each medication he was taking. Claimant had been previously taking 60 milligrams of OxyContin, but it was reduced to 20 milligrams "on account of the lawyers." (*Id.* at 30a.) The higher dose makes the pain more bearable. Claimant takes oxycodone for "break-through pain."[2] (*Id.*) He takes Provigil to stay awake because the other medications make him sleepy. Dr. Chawluk had tried to switch Claimant from Provigil to Nuvigil, a less expensive drug, but it made him sick to his stomach and caused itching and hives. After trying two samples of Nuvigil, Dr. Chawluk switched Claimant back to Provigil. Claimant denied that he has sleep apnea, narcolepsy, or shift work sleep disorder. (*Id.* at 39a.)

In support of his petition, Claimant submitted the deposition testimony of Dr. Chawluk. Dr. Chawluk testified that Claimant had been taking 60 milligrams of OxyContin twice a day in 2013, but it was reduced to 20 milligrams twice a day because Claimant told Dr. Chawluk that he was being pressured to reduce the cost of his medications. Dr. Chawluk was willing to reduce the dose and keep Claimant on that dose because "his pain was at an acceptable level." (*Id.* at 59a.) At that dose level, Claimant reported to Dr. Chawluk that he could feel the medication wearing off, he developed more pain, and his ability to walk declined. While Dr. Chawluk initially tried having Claimant only on OxyContin, because he was having a lot of pain at night, Dr. Chawluk prescribed oxycodone to help Claimant sleep.

---

[2] Once the dose of Claimant's OxyContin was reduced, Dr. Chawluk added oxycodone to Claimant's regimen.

3

Regarding the Provigil, Dr. Chawluk explained that it "is designed to treat daytime somnolence." (*Id.* at 60a.) Although "[i]t has specific indications by the [Food and Drug Administration (FDA)], [it] is used fairly extensively in an off-label fashion for daytime somnolence." (*Id.*) Dr. Chawluk said that Provigil is "really the most effective and safest alerting medication on the market." (*Id.* at 61a.) Early in his treatment with Dr. Chawluk, Claimant reported that the OxyContin was making him somnolent. Dr. Chawluk had him try samples of Provigil, and Claimant reported being more awake and alert during the day, making Dr. Chawluk comfortable in maintaining Claimant on Provigil. (*Id.*) Initially, Dr. Chawluk prescribed 200 milligrams once a day, but he later increased it to 600 milligrams a day. When Dr. Chawluk reduced the dose of Claimant's OxyContin, he also reduced the dose of Claimant's Provigil. (*Id.*) Dr. Chawluk was "hopeful" that the reduction in the opioid dose would result in an increase in Claimant's wakefulness. (*Id.* at 70a.) Claimant, however, reported that "he was too somnolent during the day[,]" and the dose was returned to the prior level. (*Id.* at 62a, 70a.) Dr. Chawluk denied that Provigil is contraindicated for treating somnolence associated with prescription opioid use. (*Id.* at 62a.) He testified that there is medical literature to support using Provigil for this purpose but, when asked for the name of the literature, he said, "I can't quote it by verse." (*Id.*) Dr. Chawluk confirmed Claimant's testimony that he tried to substitute Provigil with Nuvigil. Dr. Chawluk explained that Nuvigil has a longer duration of action, potentially fewer side effects, and costs less. Claimant, however, experienced nausea and a rash when he tried Nuvigil and had to switch back to Provigil.

The WCJ concluded that Provigil was not a reasonable and necessary treatment for Claimant. (WCJ Decision, Conclusion of Law (COL) ¶ 3.) In doing

4

so, the WCJ found that Dr. Chawluk's opinion on the reasonableness and necessity of Claimant continuing to take Provigil lacked credibility, while the WCJ found Dr. Glass's opinion to the contrary credible. (*Id.*, Findings of Fact (FOF) ¶¶ 12-13.) The WCJ cited to Dr. Glass's statement, buttressed by his citation to the website for Prescribers' Digital Reference, that Provigil is used to treat obstructive sleep apnea hypopnea syndrome, narcolepsy, and shift work sleep disorder, and that there is no evidence in the medical literature to support the use of Provigil to counteract the sedative effect of opioids. (*Id.* ¶ 14.) Based upon those factual findings, the WCJ concluded that Provigil was neither a reasonable nor a necessary treatment for Claimant. (COL ¶ 3.)

Claimant appealed the WCJ's decision regarding the reasonableness and necessity of his taking Provigil to the Board. The Board affirmed. The Board concluded that there was substantial, competent evidence to support the WCJ's determination, namely, the opinion of Dr. Glass. (Board Op. at 4.) It was the WCJ's prerogative, the Board noted, to weigh the evidence and determine credibility, and the WCJ had found that Dr. Glass's opinion was credible, while Dr. Chawluk's opinion was not credible. Since there was substantial evidence to support the WCJ's finding, the Board had no authority to overturn it. The WCJ's credibility decision was reasonable. (*Id.* at 5.) Claimant subsequently filed the instant Petition for Review with this Court.[3]

On appeal to this Court, Claimant contends that the WCJ's determination is not supported by substantial evidence. This is so, Claimant briefly asserts, because

---

[3] "Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

he requires the continued use of opioids to treat his severe pain, the opioids give him somnolence, which is a recognized side effect of opioids, and, thus, in order to counteract the somnolence, Provigil must be reasonable and necessary. The WCJ, Claimant argues, capriciously disregarded this proof showing that his continued use of Provigil is reasonable and necessary.

In a UR dispute presented to a WCJ, the employer, seeking to avoid the payment of certain medical treatment, bears the burden of proving that the treatment is not reasonable or necessary. *AT&T v. Workers' Comp. Appeal Bd. (DiNapoli)*, 816 A.2d 355, 359-60 (Pa. Cmwlth. 2003). The burden remains on the employer even if it prevails at the initial stage of UR. *Id.* at 360.

The WCJ is the ultimate fact-finder and "has exclusive province over questions of credibility and evidentiary weight." *Anderson v. Workers' Comp. Appeal Bd. (Penn Ctr. for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010). The authority of the WCJ over issues "of credibility, conflicting evidence[,] and evidentiary weight is unquestioned." *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 28 (Pa. Cmwlth. 2005). The WCJ "may accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Id.* We are bound by the credibility determinations of the WCJ. *Id.* at 29.

Moreover, it does not matter if "the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Id.* (internal quotation marks omitted). "We examine the entire record to see if it contains [substantial] evidence . . . to support the WCJ's findings." *Id.* "Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion."

6

*Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 n.12 (Pa. Cmwlth. 2016). In undertaking substantial evidence review, we "view the evidence in the light most favorable to the party who prevailed before the WCJ and draw all reasonable inferences from the evidence in favor of the prevailing party." *Id.*

A capricious disregard of evidence occurs when the fact-finder deliberately ignores relevant, competent evidence "that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Comp. Bd. of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). This requires "a deliberate and baseless disregard of apparently trustworthy evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). If there is substantial evidence to support the WCJ's factual findings, and those findings support the WCJ's conclusions, "it should remain a rare instance in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence." *Id.*

Applying these principles here, the Board properly affirmed the determination of the WCJ. Employer presented a UR report from Dr. Glass stating that Provigil is prescribed to treat sleep apnea hypopnea syndrome, narcolepsy, or shift work sleep disorder, which the WCJ credited. Claimant, undisputedly, does not have any of these conditions. Dr. Glass further stated that "[t]here is no evidence [in] the medical literature that Provigil is effective" in counteracting somnolence that results from the prescription use of opioids. (R.R. at 8a; FOF ¶ 6(c).)

Dr. Chawluk, in contrast, testified that there was medical literature to support the use of Provigil to combat somnolence associated with prescription

opioid use but, when asked for the name of the literature, he said, "I can't quote it by verse." (R.R. at 62a.) Dr. Chawluk noted that he was using Provigil in an "off-label" fashion, meaning that he was using Provigil for some other purpose than that for which the FDA had approved. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001) (explaining that "off-label" use of a medical device is use of a device "for some other purpose than that for which" it has been approved by the FDA).[4] He also testified that Provigil "is used fairly extensively in an off-label fashion for daytime somnolence." (R.R. at 60a; FOF ¶¶ 12-14.) However, Claimant did not offer any proof that Provigil is effective in combating somnolence associated with prescription opioid use. The fact that Provigil is used to counter daytime somnolence generally does not prove that it is effective for the somnolence that results from prescription opioid use. Indeed, the fact that when Dr. Chawluk decreased the dose of opioids for Claimant, he did not experience more wakefulness but required Provigil at the same dose as when he was taking a higher dose of opioids, supports Dr. Glass's statement that Provigil is not effective in combating somnolence associated with the prescription use of opioids. (R.R. at 61a-62a); *see Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246, 1251 (Pa. 2001) (stating that this Court's role in a workers' compensation case is simply to "determine whether, upon consideration of the evidence as a whole, the WCJ's findings have the requisite measure of support in the record"); *see also Bedford Somerset MHMR v. Workers' Comp. Appeal Bd. (Turner)*, 51 A.3d 267, 274 (Pa. Cmwlth. 2012) (affirming WCJ's determination that claimant's use of

---

[4] The FDA does not preclude physicians from using medical devices or, as here, medication in an off-label fashion. "To the contrary, while the FDA regulates the marketing and labeling of medical devices, it does not purport to interfere with the practice of medicine." *Southard v. Temple Univ. Hosp.*, 781 A.2d 101, 104 (Pa. 2001).

8

Fentanyl lozenges was not reasonable and necessary because the medication was approved only for pain associated with cancer due to the highly addictive nature of the medication, and the claimant suffered from chronic pain due to a work injury and subsequent surgeries, not cancer). In short, an examination of the entire record shows that there is substantial evidence upon which the WCJ could conclude that Claimant's use of Provigil was not reasonable and necessary.[5]

Moreover, the WCJ did not capriciously disregard Claimant's evidence showing that his use of Provigil was reasonable and necessary. The competing evidence the parties presented, and the substantial evidence that supports the WCJ's determination, "serve[s] to defeat [Claimant's] assertion of capricious disregard . . . ." *Williams*, 862 A.2d at 145 n.8. This is not a case where the WCJ "refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence." *Wise*, 111 A.3d at 1263.

Therefore, for the foregoing reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Cosgrove concurs in result only.

---

[5] The argument Claimant advances in his brief does not affect this conclusion. Whether the opioid medication he takes gives him somnolence is not dispositive. What is dispositive is whether Provigil is effective in treating somnolence associated with the prescription use of opioids.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Jack Barnhart,                        :

                 Petitioner       :

                                 :

              v.                :     No. 66 C.D. 2017

                                 :

Workers' Compensation Appeal        :

Board (Tremont Borough),             :

                 Respondent     :

## **O R D E R**

       **NOW**, August 16, 2017, the December 20, 2016 Order of the Workers' Compensation Appeal Board entered in the above-captioned matter is **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** Judge
