# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lorena Gray,                :
          Petitioner      :
                         :
      v.                 :  No. 814 C.D. 2019
                         :  No. 815 C.D. 2019
                         :  SUBMITTED: January 10, 2020
Workers' Compensation Appeal   :
Board (Penn-Delco School District), :
          Respondent    :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                        FILED: April 24, 2020

Lorena Gray (Claimant) petitions for review from the June 6, 2019 order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a workers' compensation judge (WCJ). The WCJ granted Claimant's review petition, expanding the description of her work injury to include a left hip contusion and lumbosacral sprain, and granted the termination petition of Penn-Delco School District (Employer) following a determination that Claimant had fully recovered from her work injury. Claimant's reinstatement petition was denied. Claimant argues on appeal that the WCJ capriciously disregarded evidence, that the record does not support a termination of her benefits, and that the WCJ's decision was not reasoned within the meaning of Section 422(a) of the Workers' Compensation Act (Act).[1] Claimant further asserts the WCJ should have drawn an adverse inference

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834. Section 422(a) provides that the parties are entitled to a reasoned decision which contains findings of fact and conclusions of law and which "clearly and concisely states and explains the rationale for the decision[.]"

from Employer's failure to produce evidence establishing it did not accept liability for injuries to Claimant's left hip and lower back. After careful review, we affirm.

## I. Background

Claimant worked part-time as an attendance clerk at Sun Valley High School (SVHS) for approximately 12 years. Reproduced Record (R.R.) at 30a, 281a. Her job was largely sedentary and required no lifting. *Id.* at 30a-31a. On January 14, 2015, Claimant slipped on the floor of the SVHS cafeteria. *Id.* at 15a. She reported the incident to her supervisor the following day, alleging injuries to her left hand, hip, and shoulder, and her back. *Id.* Claimant immediately sought treatment for injuries to her left hand and shoulder but did not seek treatment for pain in her left hip and lower back until several months later, in the summer of 2015.[2] *Id.* at 33a-35a, 71a. The injury to Claimant's left thumb caused an aggravation of preexisting degenerative joint disease, which ultimately required surgical intervention on June 26, 2015. *Id.* at 39a, 227a. Claimant's injuries did not prevent her from performing her regular job duties, however, and she did not miss time from work, as the surgery to Claimant's thumb took place when school was out of session. *Id.* at 48a-49a.

Employer issued a medical-only Notice of Compensation Payable (NCP) on July 9, 2015, and accepted liability for medical treatment related to Claimant's work injury, which Employer described as a strain and contusions to her "left upper extremity." *Id.* at 19a. Significantly, the record does not indicate that Employer ever issued a Notice of Temporary Compensation Payable (NTCP) accepting liability for any other injuries.

On July 15, 2016, Claimant filed a review petition with the Department of Labor and Industry (Department), requesting that the description of her work injury

---

[2] Claimant could not recall the exact date she sought treatment for her left hip and back, only that it took place at some point "after June." R.R. at 71a.

be amended to include injuries to her left hand, left arm, left shoulder, left hip, and lower back, with pain radiating down her legs. *Id.* at 1a. Employer denied the allegations. *Id.* at 4a.

In support of her review petition, Claimant testified at a November 1, 2016 deposition that she continued to suffer pain in her left hand, left shoulder, and left hip, and her lower back, and she had not experienced those symptoms prior to the work injury. *Id.* at 45a-46a. Claimant treated her left hip and lower back pain with Tramadol, Celebrex, and epidural injections. *Id.* at 44a, 47a. Claimant acknowledged her left hand and shoulder only hurt with movement and she had not received any treatment for the injuries to her left hand or left shoulder since the Fall of 2015. *Id.* at 45a, 61a. She agreed that all medical bills related to the treatment of her left hand and left shoulder were fully paid by Employer's workers' compensation insurer. *Id.* at 62a.

Based on Claimant's November 1, 2016 deposition testimony, Employer filed a petition seeking termination of Claimant's workers' compensation benefits on the basis she had fully recovered from the January 14, 2015 work injury. *Id.* at 7a. Claimant denied she had fully recovered and filed a petition seeking reinstatement of her workers' compensation benefits on the basis her condition had worsened. *Id.* at 9a, 12a.

### A. Claimant's Evidence

Claimant testified live before the WCJ at hearings held on March 20, 2017, and September 6, 2017. Claimant admitted she only experienced pain in her left shoulder when lifting anything over her head. *Id.* She described the residual pain in her left thumb as "feel[ing] like arthritis." *Id.* at 98a. Claimant's left hip and lower back hurt "[a]ll the time," particularly after prolonged sitting. *Id.* at 98a, 105a. She treated this pain with medication and electrical stimulation, and she occasionally

3

wore a back brace. *Id.* at 99a. Claimant continued to work, although she missed a few days of work due to the pain and stiffness in her lower back. *Id.* at 109a.

By May 2017, the pain in Claimant's lower back had increased to the point she could not sleep at night and she would fall asleep at work. *Id.* at 275a-76a. The pain in Claimant's lower back radiated to her feet, where it had previously stopped at her knees. *Id.* at 282a. Further, Claimant's legs became numb if she sat for too long and, while should could stand and stretch at her desk, she was not permitted to walk around. *Id.* at 276a, 281a. On the basis of these symptoms, Claimant's treating physician, William Murphy, D.O., restricted Claimant from working in any capacity until further notice, effective May 9, 2017. *Id.* at 269a, 276a. Claimant testified she was not capable of performing her regular job duties. *Id.* at 278a. Claimant's left hand and left shoulder continued to hurt with use, her left hip hurt constantly, and she wore a brace daily to provide support for her lower back. *Id.* at 284a-85a.

During cross-examination, Claimant acknowledged she was able to perform her work duties from the date of her work injury through May 8, 2017, the day before Dr. Murphy took her out of work. *Id.* at 280a. Claimant admitted she no longer received treatment for her left hand, left shoulder, or left hip. *Id.* at 283a, 285a.

Claimant's treating physician, Dr. Murphy, testified he first examined Claimant on July 19, 2016, approximately 18 months after her January 14, 2015 work injury. R. R. at 224a. Claimant presented with persistent lower back pain that radiated down her left leg, accompanied by numbness and tingling. *Id.* at 225a. Claimant advised Dr. Murphy of the circumstances surrounding her January 14, 2015 work injury and the various treatments provided since that date. *Id.* at 224a-25a. Dr. Murphy noted that Claimant had full range of motion with her left thumb and she exhibited no significant tenderness upon palpation, although Dr. Murphy did notice some crepitus, which he associated with arthritis. *Id.* at 226a. Claimant

4

expressed pain when raising her left shoulder over her head and to the side as well as tenderness on palpation. *Id.* Claimant's left hip was likewise tender and Claimant experienced a clicking sensation upon rotation of the joint. *Id.* at 227a.

Dr. Murphy testified that Claimant's responses during various physical maneuvers indicated the presence of left lumbar radiculopathy. *Id.* at 226a-27a. Based on his physical examination, the medical records assessed, and the history provided by Claimant, Dr. Murphy opined that Claimant's work injury consisted of a left thumb contusion and aggravation of degenerative joint disease which required surgical intervention, a left shoulder contusion and strain with a rotator cuff tear, lumbosacral strain with multilevel disc herniations, left lumbar radiculopathy, and a left hip contusion with possible internal derangement. *Id.* at 227a-28a.

Subsequent to his physical examination, Dr. Murphy performed electromyography (EMG) and nerve conduction studies on August 24, 2016. *Id.* at 230a. The nerve conduction study was normal; however, the EMG results confirmed Dr. Murphy's initial diagnosis that Claimant suffered from left lumbar radiculopathy. *Id.* at 230a, 250a. Dr. Murphy opined that the results of an April 6, 2016 magnetic resonance imaging (MRI) study of Claimant's lumbar spine corroborated his diagnosis of multilevel disc herniations at the L4-5 level. *Id.* Dr. Murphy recommended Claimant treat her lower back pain with activity modification and exercise. *Id.* at 233a. Treatment of Claimant's left hip pain was referred to Dr. Victor Kalman, an orthopedic hip specialist, who opined that Claimant's hip pain emanated from the lumbosacral region of Claimant's spine and radiculopathy, not her hip. *Id.* at 233a; Certified Record (C.R.), Item No. 20. Despite treatment, Claimant's reported symptoms worsened. *Id.* at 234a. Dr. Murphy attributed this in part to Claimant's sedentary job, as sitting could exacerbate the pain in her lumbar

spine. *Id.* Ultimately, Dr. Murphy determined that Claimant could not work in any capacity, effective May 9, 2017. *Id.* at 234a, 269a.

Dr. Murphy conceded during cross-examination that Claimant's medical records did not document a worsening in her condition. *Id.* at 258a. The results of a July 18, 2017 EMG study were "very similar" to those documented in the first EMG study performed on August 24, 2016. *Id.* at 236a. Likewise, a second MRI study of Claimant's lumbar spine taken on April 7, 2017, showed no interval changes from the previous April 6, 2016 MRI. *Id.* at 247a. Dr. Murphy further acknowledged that Claimant's MRIs revealed degenerative changes to the L4-5 level of her spine. *Id.*

Dr. Murphy never treated Claimant for any injury to her left hand, left wrist, or left thumb. *Id.* at 240a. Claimant's left shoulder symptoms were not disabling and could be treated with an exercise program and "a little bit of therapy." *Id.* Dr. Murphy admitted that Joel Swartz, the radiologist who reviewed Claimant's MRIs, did not report the presence of disc herniations or nerve encroachment at the L4-5 level. *Id.* 247a-48a. Dr. Swartz did report a "protrusion," however, which Dr. Murphy maintained is synonymous with a herniation. *Id.* at 248a. Although Dr. Murphy could not date the onset of the findings present in Claimant's EMG or MRI studies, he was "not aware she had any problems" prior to the work injury. *Id.* at 252a-53a.

**B. Employer's Evidence**

Employer's medical expert, Ira Sachs, a board-certified orthopedic surgeon, performed an independent medical examination (IME) of Claimant on January 20, 2017. *Id.* at 156a. Claimant advised Dr. Sachs that the pain in her left hand and shoulder had resolved but she continued to suffer from pain and burning in her left lower back, left hip, and left leg. *Id.* at 156a. Claimant ordinarily treated her pain

with Celebrex and Tramadol, but she had not taken any the day of the IME. *Id.* at 159a. Dr. Sachs noted that Claimant did not wear a brace, wrist support, or sling. *Id.* at 170a. She walked unassisted and did not limp, and she sat comfortably while Dr. Sachs took her medical history. *Id.* at 170a. Claimant demonstrated excellent motor strength when raising up on her toes and heels. *Id.* Claimant's spine was normal on observation but her lower left spine was tender on palpation and she expressed pain in her lower back during the straight leg test. *Id.* at 170a-71a. Claimant's voluntary range of motion was "pretty decent," and her motor, sensory, and reflex tests were negative for radiculopathy. *Id.* at 171a. Claimant had painless range of motion with both hips. *Id.* at 172a. Dr. Sachs observed no physical changes to Claimant's lower spine and extremities that he would expect to see with a disc herniation. *Id.* at 172a-73a. Claimant's subjective complaints notwithstanding, Dr. Sachs found no clinical evidence to support a finding that Claimant suffered from an ongoing lower lumbar strain, radiculopathy, or disc syndrome. *Id.* at 172a, 176a. Dr. Sachs's findings were normal with regard to Claimant's left shoulder and left hand. *Id.* at 174a-76a.

Dr. Sachs reviewed Claimant's medical records, including those related to Claimant's treatment immediately following the January 14, 2015 work injury. *Id.* at 162a. At that time, Claimant's treatment provider diagnosed her with multiple contusions, a lumbosacral strain, tendinitis, and a possible rotator cuff injury. *Id.* Dr. Sachs also reviewed Claimant's April 6, 2016 MRI study, which revealed the presence of mild degenerative changes in her lumbar spine. *Id.* at 162a-63a. Dr. Sachs detected no interval changes to Claimant's lumbar spine in the subsequent April 7, 2017 MRI. *Id.* at 168a. Dr. Sachs believed the degenerative changes he noted preexisted the work injury, as such changes take years to develop. *Id.* at 163a. Further, he found no evidence of post-traumatic changes to Claimant's lumbar spine,

7

such as nerve root compression or disc herniation, that could be construed as secondary to the January 14, 2015 work injury. *Id.* at 163a-64a, 215a.

Dr. Sachs believed that any degenerative and developmental changes he observed in an August 22, 2016 MRI of Claimant's hip were not a recent development and were unrelated to any trauma. *Id.* at 160a-61a. An MRI of Claimant's left shoulder likewise indicated "wear and tear type of changes." *Id.* at 164a. X-rays of Claimant's lumbar spine and sacroiliac joint were normal, as were x-rays of her left shoulder, left hand, and left hip. *Id.* at 161a, 167a. Dr. Sachs acknowledged that the June 26, 2015 surgery performed on Claimant's thumb was related to an "exacerbation of basal joint arthritis," and the surgery was reasonable and necessary. *Id.* at 167a, 190a.

Dr. Sachs disagreed with Dr. Murphy's interpretation of Claimant's August 24, 2016 EMG study and his diagnosis of lumbar radiculopathy. *Id.* at 197a. Dr. Sachs reiterated that he found no evidence of radiculopathy during Claimant's physical examination and no corroboration of Dr. Murphy's diagnosis in Claimant's MRI studies. *Id.* at 178a, 206a.

Dr. Sachs opined, within a reasonable degree of medical certainty, that Claimant's January 14, 2015 work injury consisted of a lumbar strain, left shoulder and hip contusions, and a left hand injury and contusions, all of which had resolved by January 20, 2017, the date of the IME. *Id.* at 177a, 180a. Dr. Sachs further opined that Claimant's condition had not worsened, as a comparison of the April 6, 2016 and April 7, 2017 MRIs documented no changes to the condition of her lumbar spine. *Id.* at 180a.

### C. WCJ Decision

The WCJ consolidated Claimant's and Employer's petitions and circulated a decision disposing of all issues on February 6, 2018. The WCJ thoroughly

8

summarized the testimonies of Claimant and Drs. Murphy and Sachs as well as the medical records presented.

The WCJ found Claimant's testimony was not credible or persuasive that her current complaint, symptoms, or disability stemmed from the January 14, 2015 work injury. WCJ Decision, Finding of Fact (F.F.) No. 24. Claimant's limited complaints concerning her hand and shoulder were not credible to sustain a finding that she continued to suffer disabling injuries related to those areas. *Id.* The WCJ found that, effective January 20, 2017, the date of the IME, Claimant had fully recovered from injuries to her hand, thumb, and shoulder. *Id.*

Claimant was likewise deemed not credible with regard to an ongoing injury to her left hip in light of Dr. Kalman's opinion that Claimant's hip pain emanated from her lumbar spine. F.F. No. 25. The WCJ found that Claimant had recovered from any hip injury sustained in the January 14, 2015 work injury. *Id.* The WCJ found Claimant credible to the extent the fall on January 14, 2015, caused her to suffer a lumbosacral strain. *Id.* However, Claimant was not credible in testifying that a continuing aggravation of the degenerative condition of her lower back rendered her disabled after January 20, 2017. *Id.* The WCJ's finding was based in part on Claimant's testimony that she did not seek treatment for her lower back until approximately six months after her January 14, 2015 work injury. F.F. No. 24. Further, Claimant's testimony that her condition had worsened was rebutted by the April 6, 2016 and April 7, 2017 MRI studies that demonstrated no interval changes to her lumbar spine. F.F. No. 25. Also significant to the WCJ's credibility determinations were her observations of Claimant's demeanor during her live testimony on March 20, 2017, and September 6, 2017. *Id.*

After comparing Claimant's medical records and the testimonies of Drs. Murphy and Sachs, the WCJ found the opinions of Dr. Sachs more credible and

9

persuasive. F.F. No. 26. Dr. Murphy first examined Claimant 18 months after her January 14, 2015 work injury and he relied on the statements and medical history provided by Claimant to determine which conditions related to the work injury. *Id.* As the WCJ found Claimant's testimony in that regard was not credible, Dr. Murphy's opinions lacked a competent factual foundation. *Id.* Dr. Murphy's opinion that Claimant's MRIs evidenced nerve encroachment was deemed not credible because neither Dr. Swartz nor Dr. Sachs found such evidence. *Id.* The WCJ found that Dr. Sachs credibly explained how Claimant's diagnostic studies demonstrated the presence of a degenerative condition and he found no signs of a traumatic injury. *Id.* Dr. Sachs' explanation of the degenerative changes present in Claimant's lumbar spine, and why they were unrelated to her January 14, 2015 work injury, was accepted as fact. *Id.*

The WCJ found that Claimant suffered injuries in the nature of a left upper arm strain and contusion, left thumb and hand injury requiring surgical intervention, a left hip contusion, and a lumbosacral strain, all of which had resolved. F.F. No. 27. The WCJ thus expanded Claimant's work injury to include a lumbosacral strain and contusion to her left hip and directed Employer to pay Claimant's costs of litigation in the amount of $3,931.63. F.F. No. 29, Conclusion of Law (COL) No. 2. Effective January 20, 2017, Claimant had fully recovered from her work injuries. F.F. No. 28. The WCJ denied Claimant's reinstatement petition, as Claimant had fully recovered as of January 20, 2017, and her absence from work was not related to her work injury. F.F. No. 30, COL No. 4. The WCJ granted Employer's termination petition, effective January 20, 2017, and directed Employer to pay Claimant's reasonable and necessary medical treatment related to her January 14,

10

2015 work injury through January 20, 2017. WCJ Decision, COL Nos. 3, 5. Claimant appealed to the Board, which affirmed. This appeal followed.[3]

## II. Issues

Claimant raises a multitude of issues on appeal,[4] which may be summarized as follows: (1) the WCJ capriciously disregarded evidence; (2) the record as a whole does not support a termination of Claimant's workers' compensation benefits; (3) the WCJ's credibility determinations are not sufficiently reasoned; and (4) the WCJ should have drawn an adverse inference based on Employer's failure to produce evidence that it had not accepted liability for injuries to Claimant's left hip and lower back.[5]

## III. Discussion

### A. Capricious Disregard of Evidence

First, we address whether the WCJ capriciously disregarded evidence favorable to Claimant's position. Claimant argues that the WCJ and Board capriciously disregarded overwhelming and uncontroverted evidence regarding the description and cause of her injuries. She contends that Dr. Murphy's opinions were

---

[3] Claimant filed separate petitions for review which this Court consolidated by order dated September 20, 2019.

[4] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.)*, 176 A.3d 1045, 1051 n.4 (Pa. Cmwlth. 2018). Substantial evidence is relevant evidence that a reasonable mind would deem adequate to support a conclusion. *Iacono v. Worker's (sic) Comp. Appeal Bd. (Chester Housing Auth.)*, 624 A.2d 814, 817 (Pa. Cmwlth. 1993).

[5] Claimant's prayer for relief seeks a reversal of the Board's order to the extent it affirmed the WCJ's denial of her reinstatement petition. Claimant's Br. at 41. In her brief before this Court, however, Claimant has not argued that the WCJ's denial was in error. Consequently, we will not address whether the WCJ erred in denying Claimant's reinstatement petition or whether the Board erred in affirming it.

11

consistent with the findings in Claimant's medical records and the WCJ erred in failing to explain why she found some injuries compensable and others not.

A capricious disregard of evidence occurs when the WCJ deliberately and baselessly disregards evidence that is apparently trustworthy. *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012). Where substantial evidence exists to support an agency's factual findings, and those findings support the conclusions, it should remain a *rare* instance in which an appellate court disturbs an adjudication based upon capricious disregard. *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 n.14 (Pa. 2002) (emphasis added). The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 (Pa. Cmwlth. 2016). In executing her role as fact-finder, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Id.* It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the inquiry before this Court is whether evidence exists to support the findings actually made. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005). According greater credibility to one witness's testimony is a manifestation of the WCJ's role as fact-finder and does not constitute a capricious disregard of evidence. *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 585 (Pa. Cmwlth. 2009). We may only overturn a credibility determination if it is arbitrary and capricious, or fundamentally dependent on a misapprehension of material facts, or so otherwise flawed as to render it irrational. *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

12

Claimant's contention that the WCJ capriciously disregarded evidence is refuted by a simple review of the evidence presented and the WCJ's findings of fact. The WCJ thoroughly summarized the medical evidence and testimony presented. In summarizing the medical testimonies of Drs. Murphy and Sachs, the WCJ described the medical records relied on by each expert and discussed their respective interpretations of those documents. Dr. Murphy, for example, identified multilevel disc herniations in Claimant's MRI studies. Dr. Sachs disagreed, opining that the MRI studies showed mild degenerative changes. The WCJ's finding that Dr. Sachs' interpretation of Claimant's medical records was more credible than that of Dr. Murphy relates to her role as fact-finder and does not constitute a capricious disregard of the evidence. *Cinram Mfg. Inc.*

The WCJ's findings consistently referred to the evidence upon which she relied or declined to credit. In concluding that Claimant failed to demonstrate her condition had worsened, the WCJ relied on the April 6, 2016 and April 7, 2017 MRI studies, which evidenced no intervening changes to Claimant's lumbar spine. The WCJ discredited the testimony of Dr. Murphy that Claimant's MRIs indicated the presence of nerve encroachment in part because Dr. Swartz, the radiologist who interpreted the MRIs, made no such finding. In discrediting Claimant's purported issues with her left hip, the WCJ relied on Dr. Kalman's opinion that her hip pain emanated from her lower back.

We likewise cannot agree with Claimant that the WCJ failed to explain why she declined to find some of Claimant's injuries compensable. The WCJ did not deny Claimant suffered from lower back pain. The WCJ was simply not persuaded that Claimant's lower back pain stemmed from the work injury. The WCJ's finding in this regard was largely formed by Claimant's own testimony that she did not seek medical attention for her lower back pain until several months later, during the

13

summer of 2015, as well as the WCJ's observation of Claimant's demeanor, which did not support her credibility.

Having considered the WCJ's decision as a whole, including her lengthy summations of the respective witnesses' testimony and the medical evidence presented, it is clear the WCJ considered the entire record and did not capriciously disregard evidence.

## B. Termination Petition

Next, we address whether the WCJ erred in granting Employer's termination petition. To succeed in its termination petition, Employer had the burden of establishing that Claimant's work injury had ceased or that any existing injury was not the result of her work injury. *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 53 (Pa. Cmwlth. 2011). Employer could satisfy that burden by presenting unequivocal and competent medical evidence that Claimant had fully recovered from her work injury. *Id.*

Claimant's argument that the WCJ erred in granting Employer's termination petition is based in part on her contention that the WCJ capriciously disregarded evidence favorable to her position. We have already rejected that argument.

Claimant also argues that Dr. Sachs' opinion of full recovery is not competent as he did not "recognize the correct injury." Claimant's Br. at 30. Claimant maintains that Dr. Sachs did not dispute her ongoing complaints of lower back pain and he agreed with Claimant's other providers that she suffered injuries more severe than those Dr. Sachs considered resolved.

Claimant is correct that a medical opinion which fails to recognize the accepted work injury is insufficient to support a termination of benefits. *Westmoreland County v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 218 (Pa. Cmwlth. 2008). Here, however, Dr. Sachs was only required to recognize the

14

accepted work injury, not any and all injuries Claimant alleged she sustained. The record demonstrates that Employer, through issuance of a medical-only NCP, accepted liability for a strain and contusions to Claimant's upper left extremity. R.R. at 19a. There is no evidence to suggest Employer at any time accepted liability for injuries to Claimant's lower back or left hip.

Furthermore, Claimant's characterization of Dr. Sachs' opinion is a misapprehension of his testimony. Dr. Sachs acknowledged that Claimant's other treatment providers diagnosed her with lumbar radiculopathy. He then explained why he disagreed with those diagnoses, and he opined that Claimant's ongoing pain was caused by a degenerative condition that preexisted her January 14, 2015 work injury.

As to the evidence supporting the WCJ's finding of full recovery, Claimant testified she had not sought any treatment related to her left thumb or shoulder since the fall of 2015, and she advised Dr. Sachs during the IME that the pain in her left wrist, hand, and shoulder had resolved. R.R. at 61a, 156a. Dr. Murphy also opined that Claimant's complaints of pain in her left thumb, wrist, and hand had resolved and she "had a good result with her left thumb injury." *Id.* at 240a. Further, Dr. Murphy testified that Claimant's shoulder symptoms were not disabling. *Id.* Dr. Kalman, Claimant's hip specialist, opined that Claimant's purported hip pain emanated from her lumbar spine, not her hip. C.R., Item No. 20. Dr. Sachs testified that degenerative and developmental changes he observed in an August 22, 2016 MRI of Claimant's hip were unrelated to any trauma and not a recent development. R.R. at 160a-61a. Therefore, with regard to any injury to Claimant's left hand, left shoulder, and left hip, the record supports a finding that Claimant had fully recovered.

15

As to Claimant's lower back pain, Claimant first sought treatment for this issue approximately six months after the January 14, 2015 work injury. *Id.* at 71a. She was able to perform her regular job duties from the date of her work injury until May 9, 2017, when Dr. Murphy restricted her from working in any capacity. *Id*. at 280a. Dr. Sachs, whose opinions were credited by the WCJ, found no evidence of post-traumatic changes or abnormalities in the diagnostic studies performed on Claimant's lumbar spine. *Id.* at 163a, 177a. The changes Dr. Sachs identified were degenerative in nature and preexisted the January 14, 2015 work injury, as such conditions take "years to develop." *Id.* Dr. Sachs found no clinical evidence to support a finding that Claimant suffered from an ongoing lumbar strain or radiculopathy. *Id.* at 176a. Dr. Sachs opined, within a reasonable degree of medical certainty, that Claimant had fully recovered from any and all injuries sustained on January 14, 2015. The WCJ found the opinions and testimony of Dr. Sachs more credible than those of Dr. Murphy and she discredited the testimony of Claimant that her ongoing lower back symptoms were related to the January 14, 2015 work injury. F.F. Nos. 25-26.

As the ultimate finder of fact and exclusive arbiter of credibility and evidentiary weight, the WCJ was free to accept or reject the testimony of any witness. *Lindemuth*. It is irrelevant whether the record contained evidence to support a finding that Claimant suffered ongoing radiculopathy as a consequence of her January 14, 2015 work injury, because the evidence also supports a contrary finding. Having reviewed the record as a whole, we discern no error in the WCJ's finding that Claimant had fully recovered from her work injury.

16

## C. Reasoned Decision

Claimant's next argument is best characterized as an attack on the WCJ's credibility determinations, which Claimant contends are not supported by the record and fail to comply with the requirements of Section 422(a) of the Act.

Section 422(a) provides, in pertinent part, that "[a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. Further, when faced with conflicting evidence, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. *Id.*

"[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In a case where the WCJ "has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, . . . could be sufficient to render the decision adequately 'reasoned.'" *Id.* at 1053. Resolution of conflicting medical testimony, however, where the medical experts testified solely by deposition, cannot be supported by a mere announcement that one expert was deemed more credible than another. *Id.* "[S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.* The WCJ need not discuss every detail of the evidence. *Amandeo*, 37 A.3d at 76. The purpose of a reasoned decision is to spare this Court from having to imagine the reasons why the WCJ believed the testimony of one witness over another. *Dorsey*

17

*v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 196 (Pa. Cmwlth. 2006).

As Claimant testified live at two separate hearings, and the WCJ was able to assess her demeanor, a simple conclusion that Claimant was not credible would have been sufficient. The WCJ's conclusion that Claimant lacked credibility was formed in part by Claimant's demeanor while testifying. However, the WCJ was also influenced by Claimant's failure to seek treatment for her lower back pain until six months after the January 14, 2015 work injury.

The WCJ's credibility determination with regard to Claimant formed the basis for her finding that Dr. Murphy's opinion also lacked credibility where it was, in part, formed by the medical history provided by Claimant. Given Dr. Murphy's reliance on the medical history Claimant provided, the WCJ determined that his medical opinion lacked a competent factual foundation. The WCJ also deemed not credible Dr. Murphy's opinion that the MRI studies of Claimant's lumbar spine indicated nerve encroachment as neither the radiologist, Dr. Swartz, nor Dr. Sachs, found such evidence. The WCJ favored the testimony of Dr. Sachs as he thoroughly discussed the degenerative changes documented in Claimant's MRIs and explained why he did not believe those changes were caused by Claimant's work injury.

As the WCJ identified and articulated the bases for her credibility determinations, her decision comports with the reasoned decision requirements of Section 422(a) of the Act.

### D. Adverse Inference

Finally, we address whether Claimant was entitled to an adverse inference based on Employer's failure to produce evidence establishing it *did not accept* liability for injuries to Claimant's left hip and lower back.

18

A party's failure to testify can support an adverse inference that whatever testimony he would have given would have been unfavorable to him. *Kennett Square Specialties v. Workers' Comp. Appeal Bd. (Cruz)*, 31 A.3d 325, 328 (Pa. Cmwlth. 2011). This adverse inference serves to corroborate evidence produced by the opposing party. *Id.* An adverse inference, however, *does not constitute evidence and it cannot alone serve as substantial evidence to support a finding of fact*. *Id.* at 328-29 (emphasis added). The adverse inference is generally made against the party with the burden of proof, and the rule only applies in cases where the unproduced evidence is "peculiarly within the reach and knowledge of only one of the parties." *Bonegre v. Workers' Comp. Appeal Bd. (Bertolini's)*, 863 A.2d 68, 72-73 (Pa. Cmwlth. 2004) (internal citations omitted).

Claimant maintains that, prior to filing its medical-only NCP, Employer accepted liability for additional injuries through issuance of an NTCP that converted to an NCP, following Employer's failure to formally accept or deny liability for the injuries set forth in the alleged NTCP.[6] Claimant contends Employer's subsequently filed July 9, 2015 NCP, which limited Claimant's injuries to a strain and contusions to her upper left extremity, is of no effect.

Claimant's assertions are based on the automatic generation of documents by the Department's Workers' Compensation Automation and Integration System

---

[6] Section 406.1(d)(1) of the Act, 77 P.S. § 717.1(d)(1), added by the Act of February 8, 1972, P.L. 25, permits an employer, through issuance of a notice of temporary compensation payable (NTCP), to initiate compensation payments without admitting liability for an alleged work injury. Upon the filing of the NTCP with the Department of Labor and Industry, a claimant may receive temporary compensation for a period of 90 days. 77 P.S. § 717.1(d)(2)(ii). If the employer does not formally accept or deny liability prior to the expiration of this 90-day period, the employer is deemed to have admitted liability and the NTCP shall convert to a notice of compensation payable (NCP). 77 P.S. § 717.1(d)(6).

(WCAIS).[7]  During the March 20, 2017 WCJ hearing, Claimant's counsel, Mark Schmidt, Esq., advised the WCJ that WCAIS issued a notice converting an NTCP (Conversion Notice) on June 26, 2015.  R.R. at 89a.  Ordinarily, this would signify that Employer previously issued an NTCP but then later failed to formally accept or deny liability for Claimant's injuries.  Such a failure would result in Employer admitting liability to all injuries set forth in the NTCP.  Here, however, *neither WCAIS nor the file kept by the by Bureau of Workers' Compensation (Bureau)* contained any record of Employer having filed an NTCP.  *Id.*  Employer's counsel was likewise unable to find an NTCP in the Bureau's file.  *Id.* at 91a.  Attorney Schmidt acknowledged the absence of an NTCP in WCAIS and the Bureau's file but nevertheless maintained that Employer "at some point" issued an NTCP.  *Id.* at 89a-90a.

The WCJ noted that there was a period of time in 2015 and 2016 during which a technical issue with WCAIS caused the system to automatically generate a Conversion Notice, even where an employer had not actually filed an NTCP.  *Id.* at 91a-92a.  Noting that "[i]f it's not there [in the file], it's not there," the WCJ declined to draw an adverse inference.  *Id.* at 92a.  Attorney Schmidt *acknowledged he was aware of the technical issue with WCAIS*, but nevertheless maintained that, even where Employer had not issued an NTCP, if at any point in the litigation process Employer became aware a document was inappropriately or inadvertently issued by WCAIS, Employer was responsible for "fix[ing] it."  *Id.* at 93a-94a.  The Board

---

[7] The WCAIS is the Department's web-based system that integrates the program areas of the Bureau of Workers' Compensation (Bureau), Workers' Compensation Office of Adjudication (WCOA), and the Board. It enables users to file petitions, applications, forms and other documents online with the Bureau and the WCOA and is found at https://www.dli.pa.gov/Businesses/Compensation/WC/claims/wcais/Pages/default.aspx (last visited 3/31/20).

agreed on appeal that an adverse inference was not appropriate in the absence of any evidence indicating the terms of the "missing" NTCP. Bd. Op. at 5.

The essence of Claimant's argument is that WCAIS's issuance of the Conversion Notice creates a reasonable inference that Employer issued an NTCP defining Claimant's injury and Employer's liability. Claimant asserts that, where Employer failed to either produce the missing NTCP or introduce evidence demonstrating it never issued one in the first place, Claimant is entitled to an adverse inference that the alleged NTCP described all injuries for which Claimant seeks compensation. Therefore, Claimant contends, Employer is liable for all injuries reasonably related to the work incident, including injuries to Claimant's left hip and lower back. Beyond a citation to case law which sets forth the purpose of an adverse inference, Claimant provides no legal support for her arguments.

Employer rejects Claimant's argument as illogical. If, in fact, the Conversion Notice issued from WCAIS in response to Employer having filed an NTCP, WCAIS would contain the NTCP. Therefore, the NTCP would not be peculiarly within Employer's reach and knowledge. Furthermore, the Conversion Notice issued on June 26, 2015, and Claimant testified she did not seek treatment for her lower back or left hip until sometime "after June" in the summer of 2015. R.R. at 71a. Claimant's treatment prior to June 26, 2015, related solely to symptoms involving her left hand and shoulder. As such, Employer had no reason to recognize liability beyond injuries to Claimant's upper left extremity.

Critical to our analysis is whether the alleged unproduced evidence is "peculiarly within the reach and knowledge of only one of the parties." *Bonegre.* To that end, Claimant's contention that the alleged NTCP is peculiarly within Employer's reach is not supported by the record. The parties do not dispute that WCAIS issued a Conversion Notice on June 26, 2015. Ideally, the issuance of the

21

Conversion Notice by WCAIS would have been triggered by the filing of an NTCP. Such a document would then have been equally within the reach of the Department. The Department, however, had no record of such a document and neither Claimant nor Employer could locate one. While Claimant asserts the NTCP is in the possession of Employer,[8] she has failed utterly to explain why the Department is not also in possession of this document.

Furthermore, even if we accepted Claimant's assertion that Employer issued an NTCP and failed to produce it at the WCJ hearing, any adverse inference drawn *could only serve to corroborate evidence otherwise produced by Claimant*. *Kennett Square*. The adverse inference is not evidence in and of itself and could not alone support a finding that Employer issued an NTCP which acknowledged Claimant suffered injuries to her left hip and lower back. None of the evidence presented suggests Employer *ever* accepted liability for these injuries. Accordingly, neither the WCJ nor the Board erred in declining to draw the adverse inference sought by Claimant.

## IV. Conclusion

Claimant's argument that the WCJ capriciously disregarded evidence lacks merit and the WCJ's findings of fact which led to a termination of Claimant's workers' compensation benefits are supported by substantial evidence. Moreover, the WCJ's credibility determinations are sufficiently reasoned to satisfy the requirements of Section 422(a) of the Act. Given the absence of corroborating evidence, the WCJ committed no error when she declined to draw an adverse

---

[8] One of Claimant's theories involves Employer filing its NTCP the same day as Claimant's surgery, which resulted in the immediate issuance of the Conversion Notice. After receiving the Conversion Notice, Employer issued an NCP in an attempt to alter the terms of an undesirable NTCP. Claimant cites no evidence to support this theory.

inference from Employer's failure to prove it *did not* issue an NTCP. Accordingly, we affirm the order of the Board.[9]

_____

ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

_____

[9] We decline to address Claimant's additional argument that neither the WCJ nor the Board addressed her out-of-pocket and outstanding medical bills, as the WCJ's order clearly directed Employer to pay for Claimant's reasonable and necessary medical treatment related to her work injury through January 20, 2017, the date of her full recovery. Conclusion of Law (COL) No. 5.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lorena Gray,                              :
               Petitioner          :
                                :
     v.                                      : No. 814 C.D. 2019
                                :
Workers' Compensation Appeal             :
Board (Penn-Delco School District),      :
               Respondent        :

# **O R D E R**

AND NOW, this 24th day of April, 2020, the June 6, 2019 order of the Workers' Compensation Appeal Board is hereby affirmed.

 

                                    _____

                                    ELLEN CEISLER, Judge