IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Roman, :
                  Petitioner :
 :
     v. : No. 658 C.D. 2020
 : SUBMITTED: November 6, 2020
Workers' Compensation Appeal :
Board (Tri State Enterprises, LLC), :
                  Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED: January 12, 2021

James Roman (Claimant) petitions this Court for review of the June 15, 2020 order of the Workers' Compensation Appeal Board (Board). The Board affirmed the decision of a workers' compensation judge (WCJ) terminating Claimant's receipt of benefits under the Workers' Compensation Act (Act)[2] on the basis that he had fully recovered from his work injury. Claimant argues that the Board erred in affirming the WCJ, as the evidence he relied upon was incompetent and inadmissible. After review, we affirm.

## I. Background

Claimant sustained a work injury on August 12, 2017, while working at a construction site for Tri State Enterprises, Inc. (Employer). Reproduced Record (R.R.) at 2a, 56a-57a. In a claim petition filed on October 18, 2017, Claimant sought

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt served as President Judge.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

total disability workers' compensation benefits for the work injury, described as "upper back, lower back and down both legs, left arm [and] shoulder." *Id*. at 2a. Employer initially denied liability for the work injury. *Id.* at 7a-8a, 35a.

In an order circulated on January 25, 2018, the WCJ adopted and approved a stipulation of the parties, which provided in relevant part that Claimant's work injury consisted of an "upper back contusion." *Id*. at 156a. Employer agreed to pay Claimant temporary total disability benefits from the date of injury and ongoing and accepted responsibility for Claimant's reasonable and necessary medical treatment. *Id.* The stipulation further provided that the parties would continue to litigate the exact description of the injury and Employer reserved its right to contest Claimant's future entitlement to benefits. *Id.*

On October 30, 2018, Employer filed a petition seeking termination of Claimant's benefits based on the results of an independent medical examination (IME) performed by Timothy Amann, D.O., who concluded that Claimant had fully recovered from the August 12, 2017 work injury. *Id.* at 17a. Claimant denied that he had fully recovered. *Id.* at 21a.

### A. Claimant's Evidence

At a December 1, 2017 deposition, Claimant testified that, on the day of the work injury, he was supervising a crew cleaning trash from the fifth floor of an apartment complex, which was under construction. *Id.* at 56a. While bending over to grab a skid located on the ground level, Claimant was struck in the back by a "four-by-six" that fell from the fifth floor. *Id.* at 57a, 59a. The impact knocked Claimant down and he "started hurting instantly." *Id.* at 59a. Claimant went to the emergency room (ER) after finishing his shift. *Id.* at 63a.

Claimant's medical records from the ER indicate that he presented with severe pain in "the area of the left scapula" and on the left side of his upper- and mid-thoracic spine. *Id*. at 24a. He was diagnosed with a "contusion with abrasion," and instructed to apply ice to the injury for 30 minutes, 5 times daily, for 1 week. *Id.* at 25a. The ER physician prescribed Ultram, to be taken every six hours, as needed for pain. *Id.* Claimant received a tetanus shot and was told to follow up with his family doctor. *Id.* at 63a.

On August 14, 2017, Claimant submitted an incident report to Employer in which he indicated that his back and shoulder were injured. *Id*. at 30a. A subsequent "Report of Injury Form" dated September 16, 2017, and signed by Claimant, specified that Claimant sustained injuries to the "left shoulder [and] upper mid left side of back [and] shoulder." *Id.* at 32a.

Dr. Dabundo, Claimant's family doctor, provided Claimant with a note keeping him out of work until August 21, 2017. *Id.* at 65a. Claimant asserted that he contacted Employer about returning to work, but he was notified not to return for "another couple of weeks." *Id.* at 97a. Thereafter, Claimant returned to work for "three or four days," but he was unable to keep up with the physical aspects of the job, which required he carry equipment weighing 40 to 50 pounds and wear a 25- to 30-pound tool belt. *Id.* at 68a-69a, 79a.

Initially, Claimant testified that he returned to work at the end of August. *Id.* at 97a. Later, Claimant stated that he returned to work in mid-September. *Id.* at 99a. Employer presented a note from Dr. Dabundo's office, which indicated that Claimant sought treatment on September 14, 2017, and he was taken out of work that day. *Id.* at 100a. Claimant clarified that he returned to work for Employer on September 25, 2017, but he "worked in between" August 12, 2017, and that date.

3

*Id.* at 101a-02a. Following an off-the-record discussion between counsel for Claimant and Employer, Claimant agreed that he was out of work from August 12, 2017, through "some point after [September 25th]." *Id.* at 103a. Claimant subsequently worked a few days, with a restriction of no-lifting. *Id.*

Approximately 10 days later, Claimant sought treatment with William Murphy, D.O., following a referral by his counsel. *Id.* at 104a. At that time, Dr. Murphy provided Claimant a note taking him out of work entirely. *Id.*

Claimant testified that he continues to suffer from pain in his neck, his mid- and lower back, left shoulder, and left arm, and he periodically loses feeling in his left arm. *Id.* at 71a-72a, 112a-13a. Claimant feels a sharp pain in his left arm if he raises it in a "certain direction." *Id.* at 106a. He also feels pain and tingling in the back of his left leg. *Id.* at 112a. Claimant described the "constant" pain in his back as an 8 out of 10. *Id.* at 115a-16a. He treats his symptoms with muscle relaxers and Tylenol. *Id.* at 108a. Prior to the work injury, Claimant played softball and basketball, but he is no longer able to play sports. *Id.* at 118a. Claimant does not believe he is capable of performing his regular job duties or any other work. *Id.* at 73a, 119a. Claimant attends physical therapy twice a week, which helps somewhat. *Id.* at 105a.

Claimant acknowledged he suffered a work-related lower back sprain in 2007 after slipping on water, which took him out of work for approximately two months. *Id.* at 73a-74a, 110a. He injured his hand in a motor vehicle accident (MVA) in 1995. *Id.* at 109a. Beyond those incidents, Claimant denied involvement in any other workers' compensation matters or MVAs, and he denied any previous history of neck injury. *Id.* at 112a, 123a.

4

During redirect examination, in an attempt to refresh Claimant's recollection with regard to his medical history, Claimant's counsel presented a September 14, 2017 office note from Dr. Dabundo, which indicated Claimant complained that day of tingling in his left arm which Claimant related to an injury sustained in a July 2016 MVA. *Id.* at 125a-26a. Claimant admitted he had pain in his left arm as a result of that MVA, but "nobody got hurt" in the accident. *Id.* at 126a. Despite receiving physical therapy for "about seven months," Claimant described the pain in his left arm as "very minimum." *Id.* at 129a-30a. During additional questioning on re-cross-examination, Claimant agreed he previously suffered "a little" neck pain, which was related to an injury he received playing basketball a few months before the 2016 MVA. *Id.* at 131a-32a. Claimant concluded his deposition testimony by asserting that the tingling and numbness in his left arm was a recent issue. *Id.* at 133a.

Claimant also testified in person before the WCJ on October 30, 2018. He had not worked for any other employer since August 12, 2017, the date of his work injury. R.R. at 320a. Claimant briefly returned to work for Employer because he was afraid of losing his job. *Id.* at 321a. He continued to suffer pain in his upper back and in the back of his left shoulder and left arm. *Id.* at 323a-24a. Claimant remained incapable of returning to work. *Id.* at 322a.

Claimant asserted that he had recovered from any injuries suffered prior to the August 12, 2017 work injury and that he was not restricted from working prior to that date. *Id.* at 324a-25a. Claimant agreed he received medical treatment following the July 2016 MVA and he experienced numbness in his left arm as a consequence. *Id.* at 326a-27a. He did not recall testifying at the December 1, 2017 deposition that he suffered a neck injury while playing basketball. *Id.* at 327a.

5

Dr. Murphy testified by deposition on April 30, 2018. Claimant's counsel referred Claimant to Dr. Murphy for evaluation and treatment approximately two months after Claimant sustained the work injury. R.R. at 168a, 194a. Dr. Murphy first examined Claimant on October 5, 2017. *Id.* at 168a. Subsequent visits took place on November 13, 2017, and April 30, 2018. *Id.* at 178a, 182a.

Claimant related to Dr. Murphy that he was injured at work when a piece of wood fell from a roof and landed on his upper back. *Id.* at 168a, 204a. At that time, Claimant presented with left-sided neck and left shoulder pain, and pain in his upper- and mid-back, which radiated into his left arm and down both legs. *Id.* at 169a. Claimant had a prior work-related injury to his lower back in 2007. *Id.* at 170a. Imaging studies taken in 2007 indicated the presence of mild degenerative disc disease. *Id.* at 171a. Claimant advised Dr. Murphy that he previously injured his cervical spine in a MVA that occurred "several years" before the work injury. *Id.* at 170a. Dr. Murphy's subsequent review of Claimant's medical records revealed that the MVA occurred in July 2016. *Id.* at 170a, 201a. Claimant was initially evaluated for an injury related to this MVA by Dr. Raymond Wisdo on July 8, 2016. *Id.* at 201a. Dr. Wisdo's "final examination report" was dated June 8, 2017. *Id.* Claimant advised Dr. Murphy that he had fully recovered from that injury. *Id.* at 170a. Claimant's medical records further indicated that he sought treatment from his family physician for non-trauma related lower back pain in 2015 and 2016. *Id.*

Dr. Murphy noted a laceration approximately six inches in length located in the area of Claimant's left shoulder blade and upper back. *Id.* at 173a. The laceration appeared to be healing but Claimant exhibited tenderness in that area. *Id.* Dr. Murphy considered the laceration "significant," given it was still visible after two months. *Id.* at 174a. Claimant had painful range of motion in his neck when bending

6

his head forward and to the right and in his lower back when bending backward. *Id.* Claimant further exhibited tenderness in his mid- and lower back region and in the left trapezius muscle. *Id.* Claimant's responses to various physical maneuvers indicated the possible presence of bursitis, a rotator cuff injury, or nerve injury to the left shoulder area. *Id.* at 175a. Dr. Murphy ultimately diagnosed Claimant with a left upper back laceration and contusion due to trauma, a cervical strain, left trapezius contusion and strain, thoracic strain, left shoulder contusion and strain with suspected internal derangement and left brachial plexus injury, and lumbosacral strain with suspected lumbar disc injury with radiculopathy. *Id.* at 176a. Dr. Murphy related the cause of these diagnoses to Claimant's August 12, 2017 work injury, in part because Claimant had no symptoms or "active treatment" prior to the date of the work injury. *Id.* at 177a, 200a. Claimant's injury disabled him from all employment, including his pre-injury job. *Id.* at 177a. Dr. Murphy recommended physical therapy to treat Claimant's symptoms and suggested Claimant obtain a magnetic resonance imaging (MRI) and electrodiagnostic study of his left shoulder. *Id.* at 177a, 180a. Claimant advised Dr. Murphy at his April 30, 2018 appointment that he discontinued physical therapy because it aggravated his symptoms. *Id.* at 182a.

After reviewing Claimant's medical records, Dr. Murphy determined that some of Claimant's left shoulder and cervical spine problems predated the August 12, 2017 work injury. *Id.* at 185a-86a. Consequently, Dr. Murphy revised his initial diagnosis to reflect that the traumatic upper back laceration and contusion and cervical strain caused an aggravation of Claimant's cervical, thoracic, and lumbosacral condition. *Id.* at 186a. The results of an electromyography (EMG) study of Claimant's cervical spine suggested nerve root irritation at the C5-C7 levels.

7

*Id.* at 188a. Dr. Murphy opined that Claimant remained disabled from all employment as a result of the August 12, 2017 work injury. *Id.* at 186a.

During cross-examination, Dr. Murphy acknowledged that he reviewed the reports generated by Claimant's diagnostic studies but not the original films. *Id.* at 196a, 201a. He agreed that a July 14, 2016 note from one of Claimant's treatment providers indicated he suffered from severe, 8 out of 10, pain in his left shoulder and intermittent tingling in his left arm. *Id.* at 201a-02a. Dr. Murphy further agreed that a September 14, 2017 note from Claimant's family physician indicated that Claimant related the tingling in his left arm to the 2016 MVA. *Id.* at 206a-07a. Claimant's medical records from the date of his work injury did not suggest that he suffered any injury to his lower back. *Id.* at 204a. Dr. Murphy opined, however, that a piece of wood striking Claimant's back from above could cause injury to the entire spine. *Id.* at 223a. Moreover, Dr. Murphy testified that it was "rather common" for a patient to focus initially on one area of complaint and recognize additional injuries a few days or weeks later. *Id.* at 222a.

## B. Employer's Evidence

Employer's medical expert, Dr. Amann, testified by deposition on July 10, 2018. Dr. Amann, a board-certified orthopedic surgeon, examined Claimant on March 30, 2018. R.R. at 251a, 255a. Claimant presented with pain in his neck, lower back, left shoulder, and left arm, which he attributed to the August 12, 2017 work injury. *Id.* at 255a-56a. Claimant advised Dr. Murphy that he occasionally experienced tingling and numbness is his left arm. *Id.* at 256a. Claimant treated his symptoms with physical therapy and Neurontin. *Id.* While Claimant denied any history of neck or back issues, his intake sheet reflected that he could not remember whether he had any such history. *Id.* at 257a.

8

Dr. Amann noted that Claimant had a longitudinal scar on the back his left shoulder, which appeared to be a few inches in length, and Claimant complained of tenderness upon palpation. *Id.* Dr. Amann did not believe the scarring extended into any deep tissues, and he did not observe any spasm in that area. *Id.* He observed no spasms in Claimant's neck or back, and Claimant's range of motion was "fairly normal," with slight restriction when bending to the side and rotating. *Id.* at 258a. Claimant's reflexes and sensation were normal. *Id.* Dr. Amann found no evidence of nerve problems in Claimant's legs or nerve compression in his cervical spine. *Id.* at 259a. Claimant's gait was normal. *Id.*

Dr. Amann's initial impression was that Claimant suffered a contusion and strain to his neck, back, and left shoulder as a result of the work injury, with a possible injury to the nerves of the left shoulder. *Id.* at 261a. Based on his clinical observations of Claimant, Dr. Amann opined that Claimant had recovered from any strain or contusions to his back, neck, and left shoulder, and he no longer required treatment for those injuries. *Id.* at 262a-63a. As to the specific work injury described in the WCJ's January 25, 2018 order, an "upper back contusion," Dr. Amann believed that Claimant had recovered from that injury and he could return to any activities engaged in prior to the work injury. *Id.* at 263a.

Following the March 30, 2018 IME, Dr. Amann reviewed additional medical records, including August 2016 MRI studies of Claimant's cervical spine and left shoulder and the EMG study performed by Dr. Murphy. *Id.* at 264a. Dr. Amann agreed that the EMG study indicated the presence of chronic radiculopathy coming from the cervical spine; however, that condition was present in the 2016 MRIs. *Id.* at 264a-65a. Accordingly, Claimant's cervical spine issues predated the August 12, 2017 work injury. *Id.* at 265a. The 2016 MRI of Claimant's left shoulder likewise

9

confirmed that his shoulder issues predated the work injury. *Id.* Dr. Amann agreed that the work injury "possibly could have aggravated [Claimant's] cervical spine issue," but he felt that Claimant had recovered from any such aggravation. *Id.* at 266a. He did not believe the work injury aggravated any preexisting condition of Claimant's left shoulder or his lumbar spine. *Id.* at 267a.

Dr. Amann did not deny that Claimant's preexisting issues with his neck, left shoulder, or lower back might require future treatment. *Id.* at 267a-68a. As to the work injury, however, Dr. Amann opined that the only residual effect was "some tenderness in the back of the shoulder" and a scar, which Dr. Amann acknowledged could be sensitive. *Id.* at 268a. Dr. Amann agreed on cross-examination that he had no first-hand knowledge of Claimant's medical condition prior to the date of the IME. *Id.* at 271a.

### C. WCJ Decision

In a decision circulated on March 20, 2019, the WCJ found that, as a result of the August 12, 2017 work injury, Claimant suffered an abrasion and contusion to his upper back. R.R. at 423a. Claimant had fully recovered from his work injury by March 30, 2018, the date of Dr. Amann's IME. *Id.* The WCJ further found that the evidence did not establish Claimant suffered the additional injuries he alleged. *Id.* Claimant's testimony in that regard was deemed less than credible based on his appearance, demeanor, and comportment when testifying before the WCJ. *Id.* at 421a. The WCJ also found Claimant's testimony lacked credibility because he misrepresented his medical history regarding the 2016 MVA to Drs. Murphy and Amann. *Id.* Claimant was similarly evasive when testifying at his December 1, 2017 deposition. *Id.* The WCJ deemed Claimant's preexisting condition significant enough that his lack of veracity tainted his entire testimony. *Id.* at 422a. As a

10

consequence, the WCJ rejected Claimant's testimony as to his physical condition prior to the work injury, the impact of his work injury, and any lingering symptoms Claimant alleged were related to the work injury. *Id.*

The WCJ placed great weight on the September 14, 2017 note from Claimant's family physician, which indicated that Claimant sought treatment approximately one month after the work injury and related his left arm symptoms to the 2016 MVA. *Id.* This information suggested that Claimant's work injury had minimal impact on his preexisting symptoms. *Id.*

Dr. Murphy's testimony was deemed less credible than that of Dr. Amann, as Dr. Murphy recognized that questions of causation rely on the accuracy of a claimant's history, and Claimant was found not credible and an unreliable historian. *Id.* Claimant's ER records documented that he suffered an abrasion and contusion to his mid-back. There was no indication that he sustained injuries to his neck, left shoulder, lower back, or that he had radicular symptoms in his upper or lower extremities. *Id.* Claimant was seen by Dr. Murphy on October 5, 2017, following a referral from his attorney; however, the September 14, 2017 note from Claimant's family physician suggested that Claimant related his left arm numbness to the 2016 MVA. *Id.* The WCJ found Dr. Amann well-qualified to address Claimant's alleged medical issues, and his clear and logical report and testimony suggested he thoroughly evaluated Claimant. *Id.*

Accordingly, the WCJ granted Employer's termination petition, effective March 30, 2018. Claimant appealed to the Board, which affirmed. This appeal followed.[3]

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights **(Footnote continued on next page…)**

11

## II. Issues

Claimant argues that the WCJ relied on incompetent and inadmissible evidence in finding Claimant had fully recovered from his work injury. As a consequence, Claimant contends that the Board erred in affirming the WCJ, and this matter must be remanded for a new hearing before a different WCJ.

## III. Analysis

Claimant contends that the WCJ relied on inadmissible and incompetent evidence, and that the WCJ mischaracterized evidence before concluding that Claimant had fully recovered from his work injury. He asserts that no reasonable person could reach the same conclusions based on a "proper" review of the record as a whole. Claimant's Br. at 16. Claimant's argument is premised on his assertion that Dr. Amann's testimony was incompetent and equivocal because he qualified his opinions with phrases such as "I believe." *Id.* at 18. Claimant argues, without benefit of relevant legal authority, that the sheer number of qualifying statements made by Dr. Amann renders his opinion "less than certain" as a matter of law. *Id.* at 19. Dr. Amann's opinions are further suspect having been based on a review of what Claimant characterizes as "selected excerpts" of his medical records, and Claimant asserts that Dr. Amann failed to review any medical records which predated the work injury or relate to treatment Claimant received after October 2017. *Id.* at 20. As Dr. Murphy supplied the only competent medical testimony, Claimant maintains that the WCJ erred in finding Claimant had fully recovered from his work injury.

"To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased[] or [that] any

---

were violated. *Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.)*, 176 A.3d 1045, 1051 n.4 (Pa. Cmwlth.) (*en banc*), *appeal denied*, 189 A.3d 385 (Pa. 2018).

remaining conditions are unrelated to the work injury." *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). The employer satisfies this burden when its medical expert "unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered[] [and] can return to work without restrictions and that there are no objective medical findings [that] either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). The WCJ may terminate benefits only if the WCJ finds that the claimant is fully recovered from all aspects of the work injury. *Central Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998).

The question of whether expert medical testimony is unequivocal and, thus, competent evidence to support a WCJ's factual determinations is a question of law subject to our review. *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012). A medical expert's testimony is unequivocal if, after providing a foundation, he testifies that he believes or thinks the facts exist. *Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011). A medical expert's use of words such as "probably," "likely," and "somewhat" does not render his opinion equivocal as long as his testimony, when read in its entirety, is unequivocal and he has not recanted the opinion first expressed. *Id.* at 72.

Having reviewed Dr. Amann's testimony, we disagree with Claimant that it was equivocal. Dr. Amann's qualification that the work injury "possibly could have aggravated" the condition of Claimant's cervical spine, for example, does not render equivocal his subsequent opinion that Claimant had fully recovered from the work

13

injury by March 30, 2018. R.R. at 266a. Claimant has not identified a single instance in which Dr. Amann recanted his opinion of full recovery, and our review of his testimony has not uncovered any.

Furthermore, Claimant's assertion that Dr. Amann failed to review any of Claimant's medical records which predate the work injury is simply untrue. While Dr. Amann acknowledged that he did not examine Claimant prior to March 30, 2018, Dr. Amann explicitly testified that he reviewed medical records relating to Claimant's July 2016 MVA, including the MRI studies of cervical spine and left shoulder, as well as the narrative reports of Claimant's family doctor, Dr. Dabundo. Claimant's argument that Dr. Amann's opinions are based on an incomplete understanding of Claimant's medical history is wholly lacking in merit.

Next, Claimant argues that the WCJ's decision is tainted by his consideration of medical records which were not introduced into evidence and are inadmissible hearsay. Claimant contends that the WCJ's credibility determinations were heavily influenced by discussion of these records, which relate to Claimant's treatment following the July 2016 MVA. Specifically at issue is a September 14, 2017 office note from Dr. Dabundo, which references Claimant's continuing left arm pain.

Under the so-called *Walker* Rule, the use of hearsay evidence in workers' compensation matters is limited to cases where there is corroborating evidence and there is no objection on the record. *Ciarolla v. Workers' Comp. Appeal Bd. (Astrazeneca Pharms. LP)*, 239 A.2d 204, 208 (Pa. Cmwlth. 2020), (citing *Walker v. Unemployment Comp. Bd. of Rev.*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976) (hearsay evidence, when admitted without objection, will be given its natural probative effect and may support a finding of the board, if corroborated by any

14

competent evidence in the record; a finding of fact based solely on hearsay will not stand)).

Claimant lodged no objection to discussion of the subject record. We must therefore review whether the information contained therein is corroborated in the record. The WCJ made the following finding with regard to Claimant's credibility:

19. Claimant's testimony regarding his symptoms related to the work injury is rejected as less than credible based on the following:

a) His appearance, demeanor and comportment when he testified live before the WCJ.

b) He misrepresented his history at the firs[t] visit with Dr. Murphy. According to Dr. Murphy, [C]laimant advised him that he had suffered a cervical spine injury in a motor vehicle accident "years before this incident." In fact, [C]laimant suffered a cervical spine injury in a motor vehicle accident on July 1, 2016, less than one year before the August 12, 2017 work injury. He underwent an MRI of the cervical spine in August 2016 which revealed disc herniations, and remained under treatment until June 2017. On September 14, 2017, he complained to his family physician of left upper extremity symptoms related to the 2016 accident.

c) He misrepresented his prior symptoms in his deposition testimony on December 1, 2017. Even when confronted with Dr. Dabundo's September 14, 2017 note by his own attorney he remained evasive, claiming that "nobody got hurt" in the accident. On cross[-]examination, he claimed that he only received physical therapy for seven months, that the injury to his arm was "very minimum" and that his neck pain was "just a little."

d) He again misrepresented his history when he saw Dr. Amann on March 30, 2018, writing on the intake sheet that he could not remember prior neck or back problems and he specifically denied prior symptoms to Dr. Amann.

15

e) The phrase *falsus in uno, falsus in omnibus* (false in one thing, false in all things) applies. Claimant's preexisting condition is of such significance in this case that his lack of veracity taints his entire testimony. The WCJ rejects his testimony as to his status before the work injury, the impact of the work injury, and his alleged ongoing symptoms related to the work injury.

f) The history set forth in Dr. Dabundo's September 14, 2017 progress note is given great weight by the WCJ. Although the note itself was not placed into evidence, its contents were summarized by claimant's counsel during [C]laimant's deposition without objection. Its contents were repeated by defense counsel, again without objection, during cross[-]examination of Dr. Murphy. The fact that [C]laimant saw his family doctor on that date, about one month after the work injury, and related his left upper extremity symptoms to the motor vehicle accident one year before, <u>and not to the work injury occurring one month before,</u> is telling and suggests that the work injury had minimal, if any impact on those symptoms. It is also telling that [C]laimant gave no complaints about the other areas of the body allegedly injured in the work accident. Claimant was only treating with Dr. Dabundo at that point.

WCJ Decision, F.F. No. 19 (emphasis in original), (internal citations omitted).

When presented with Dr. Dabundo's September 14, 2017 office note at his December 1, 2017 deposition, Claimant did not dispute the validity of its contents, and he admitted to suffering from pain in his left arm as a result of the July 2016 MVA. Moreover, as the WCJ notes, the content of this note was discussed by *Claimant's own counsel* as a means of refreshing Claimant's recollection of any injuries Claimant suffered in the MVA.

Even if this Court excluded consideration of the September 14, 2017 office note, and the WCJ's reliance thereon, Claimant's testimony regarding the July 2016 MVA, and any injuries he sustained as a result, clearly supports the WCJ's finding

16

that Claimant lacked credibility. Claimant initially testified that he was involved in an MVA in 1995 and filed a workers' compensation claim in 2007. After prompting from his own attorney, Claimant acknowledged the 2016 MVA and, despite asserting that "nobody was hurt" in the accident, he admitted to a left arm injury that required he attend physical therapy over the course of seven months. Claimant further acknowledged a neck injury sustained while playing basketball a few months prior to the work injury.

Moreover, in a case where the WCJ "has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible" is sufficient for this Court to sustain a WCJ's credibility determination. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053 (Pa. 2003).

The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 (Pa. Cmwlth. 2016). In executing his role as factfinder, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Id.* It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the inquiry before this Court is whether evidence exists to support the findings actually made. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005).

We are unpersuaded by Claimant's argument that the WCJ's decision improperly relied on incompetent and inadmissible evidence. To the contrary, the WCJ terminated Claimant's benefits based on the credited testimony of Dr. Amann that Claimant had fully recovered from the August 12, 2017 work injury. We will not overturn the WCJ's credibility determinations in that regard or with respect to

17

the discredited testimonies of Dr. Murphy and Claimant. Accordingly, we affirm the Board.

                                    _____

ELLEN CEISLER, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Roman,                                  :
        Petitioner                 :
                                   :
        v.                         :   No. 658 C.D. 2020
                                   :
Workers' Compensation Appeal              :
Board (Tri State Enterprises, LLC),       :
        Respondent                 :

## **O R D E R**

AND NOW, this 12th day of January, 2021, the June 15, 2020 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____

ELLEN CEISLER, Judge